**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EVERYWARE GLOBAL, INC., *et al.*,[1] | ) | Case No. 15-10743 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**MOTION OF EVERYWARE GLOBAL, INC., *ET AL.*, FOR ENTRY OF**
**AN ORDER (A) SCHEDULING A COMBINED DISCLOSURE STATEMENT**
**APPROVAL AND PLAN CONFIRMATION HEARING, (B) ESTABLISHING**
**A PLAN AND DISCLOSURE STATEMENT OBJECTION DEADLINE**
**AND RELATED PROCEDURES, (C) APPROVING THE SOLICITATION**
**PROCEDURES, (D) APPROVING THE CONFIRMATION HEARING NOTICE,**
**AND (E) DIRECTING THAT A MEETING OF CREDITORS NOT BE CONVENED**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this motion (this "Motion") for entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), (a) scheduling a combined hearing (the "Confirmation Hearing") on the

adequacy of the Debtors' disclosure statement (as amended, supplemented, or otherwise

modified from time to time, the "Disclosure Statement") and confirmation of the Debtors'

prepackaged chapter 11 plan of reorganization (as amended, supplemented, or otherwise

modified from time to time, the "Plan"),[2] (b) establishing a deadline for objections to the

adequacy of the Disclosure Statement and confirmation of the Plan (the "Objection Deadline")

and approving related procedures, (c) approving the solicitation procedures regarding votes to

accept the Plan (the "Solicitation Procedures"), (d) approving the form and manner of notice of

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Anchor Hocking, LLC (6923); Buffalo China, Inc. (9731); Delco International, Ltd. (7553); EveryWare, LLC (2699); EveryWare Global, Inc. (4553); Kenwood Silver Company, Inc. (2286); Oneida Food Service, Inc. (7321); Oneida International Inc. (4774); Oneida Ltd. (5700); Oneida Silversmiths Inc. (6454); Sakura, Inc. (9359); THC Systems, Inc. (9103); Universal Tabletop, Inc. (4265).  The location of the Debtors' service address is:  519 North Pierce Avenue, Lancaster, Ohio 43130.

[2]  Capitalized terms used but not defined herein have the meanings given to such terms in the Plan and the Disclosure Statement, as applicable.

the Confirmation Hearing (the "Notice"), and (e) directing that the United States Trustee for the District of Delaware (the "U.S. Trustee") not convene a meeting of creditors (the "Creditors' Meeting") under section 341(e) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") if the Plan is confirmed within 75 days of the date hereof (the "Petition Date"). In support of this motion, the Debtors respectfully state as follows.[3]

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105, 1125, 1126, and 1128 of the Bankruptcy Code, Rules 2002, 3016, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 3017-1.

---

[3]     The facts and circumstances supporting this Motion are set forth in the *Declaration of Joel Mostrom in Support of First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein.

## Relief Requested

4.      The Debtors seek entry of the Order, (a) scheduling the Confirmation Hearing, (b) establishing the Objection Deadline and approving related procedures, (c) approving the Solicitation Procedures, (d) approving the form and manner of distributing the Notice, and (e) directing that the U.S. Trustee not convene the Creditors' Meeting if the Plan is confirmed within 75 days of the Petition Date, and for certain related relief.

5.      In connection with the foregoing, the Debtors request that the Court approve the following schedule of proposed dates:

| Event | Date[4] |
| --- | --- |
| Voting Record Date[5] | March 31, 2015 |
| Start of Solicitation | April 3, 2015 |
| Petition Date | April 7, 2015 |
| Notice Date | April 9, 2015 |
| Voting Deadline[6] | April 17, 2015 |
| Objection Deadline | May 8, 2015 |
| Reply Deadline | May 13, 2015 |
| Confirmation Hearing | May 15, 2015 |

---

[4]    Certain of the proposed dates are subject to the Court's availability.

[5]    The "Voting Record Date" is the date as of which a holder of record of a claim entitled to vote on the Plan must have held such claim or interest to cast a vote to accept or reject the Plan.

[6]    The "Voting Deadline" is the date and time by which a holder of a claim entitled to vote to accept or reject the Plan must have submitted its ballot casting its vote, as more fully described herein.

### Introduction[7]

6.      The Debtors commenced these chapter 11 cases to implement a consensual, prepackaged chapter 11 plan of reorganization—i.e., the Plan.[8]  The restructuring transactions contemplated by the Plan will significantly deleverage the Debtors' balance sheet, reducing the Debtors' funded debt obligations by approximately 72.4% by converting the entire $248.7 million term loan facility (the "Term Loan Facility") into 96.0% of the reorganized Debtors' new equity (the "New Common Stock").  All other creditors, including holders of general unsecured claims, are "riding through" these chapter 11 cases.  The Plan has support from the Debtors' primary stakeholders, including term loan lenders holding more than 65.0% of the loans outstanding under the Term Loan Facility (the "Consenting Term Lenders"), and equity holders holding more than 84.0% of EveryWare common stock and 100% of EveryWare preferred stock (the "Consenting Equity Holders") pursuant to a restructuring support agreement (the "Support Agreement").  As of the Petition Date, holders of more than 68.1% in amount of Class 5 Term Loan Facility Claims—the only class entitled to vote on the Plan—already have voted to accept the Plan.[9]

---

[7]   For more information regarding the Debtors' history, operations, and financial performance, see the First Day Declaration.  On April 7, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have filed a motion seeking joint administration of their chapter 11 cases under Bankruptcy Rule 1015(b).  The Debtors are operating their businesses as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

[8]   For additional information, please refer to the *Debtors' Joint Prepackaged Chapter 11 Plan* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") and the *Disclosure Statement for the Debtors' Joint Prepackaged Chapter 11 Plan*, filed contemporaneously herewith.

[9]   *See Preliminary Declaration of Christina Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Debtors' Joint Prepackaged Chapter 11 Plan* (the "Preliminary Voting Report"), filed contemporaneously herewith.  The Debtors commenced solicitation of the Plan on April 3, 2015.  Solicitation will remain open until April 17, 2015.

## Background

7.    The Debtors are leading global marketers of tabletop, food preparation, and storage products for the consumer, foodservice, and specialty markets. The Debtors' primary operating subsidiaries, Oneida Ltd. and Anchor Hocking, LLC, were founded in 1848 and 1873, respectively. In 2011, investment funds affiliated with Monomoy Capital Partners completed their acquisition of these companies and, in March 2012, integrated them under the EveryWare brand. The Debtors completed a subsequent merger transaction in May 2013, resulting in their existing capital structure today. As of September 30, 2014, the Debtors reported total assets of approximately $237.8 million and total liabilities of approximately $380.4 million. As of the Petition Date, the Debtors' funded debt obligations include a $250.0 million term loan facility— i.e., the Term Loan Facility—and $60.0 million asset-based revolving facility (the "ABL Facility"), with outstanding principal balances of approximately $248.7 million and $43.6 million,[10] respectively. For the year ended December 31, 2014, the Debtors preliminarily reported $354.0 million of total revenue.

8.    Since the early part of 2014, the Debtors have explored and implemented a series of out-of-court financial and operational restructuring initiatives to stabilize the business and create long-term value. A number of these initiatives succeeded, including the satisfaction of certain performance targets under a revised business plan in the second-half of 2014. The Debtors' 2015 business plan projected compliance with the financial covenants under the term loan credit agreement (the "Term Loan Agreement"). Nevertheless, in early March 2015, the Debtors were informed that they may receive a "going concern" qualification from their independent auditors in connection with the filing of their annual report. If uncured within 30

---

[10]   In addition, approximately $10.2 million of standby letters of credit have been issued under the ABL Facility.

days, the going concern qualification could have ripened into an event of default under the Term Loan Agreement and a cross-default under the ABL loan agreement.  If such event a default occurred, liquidity issues arising from the resultant, foreseeable contraction of trade terms from the Debtors' vendor and supplier base could have jeopardized the Debtors' ongoing operations. Accordingly, the Debtors engaged their primary equity holders, a steering committee of term loan lenders, and the ABL agent regarding various restructuring alternatives—both out-of-court and in-court—to strengthen the Debtors' balance sheet, provide short-term liquidity support, and create a sustainable capital structure to position the Debtors for the future.  On March 31, 2015, after extensive, hard fought negotiations, the Debtors, the Consenting Term Lenders, and the Consenting Equity Holders entered into the Support Agreement, whereby the parties thereto have agreed to support the restructuring transactions described herein.

9.      As noted above, these restructuring transactions will significantly deleverage the Debtors' balance sheet, reducing the Debtors' funded debt obligations by approximately 72.4% by converting the entire $248.7 million Term Loan Facility into 96.0% of the New Common Stock.  The Plan provides that the other 4.0% of New Common Stock will be allocated to all existing equity holders in exchange for the Consenting Equity Holders' support of the proposed restructuring.  Importantly, holders of allowed general unsecured claims will be paid in full in cash under the Plan.  The Debtors have also received commitments for a $40.0 million new money DIP term facility and continued access to their $60.0 million ABL Facility to ensure the smooth continuation of operations during the in-court proceedings.  The Debtors and the parties to the Support Agreement believe that the Plan and the transactions contemplated thereunder will right-size the Debtors' balance sheet, improve liquidity, and strengthen go-forward operations, positioning the Debtors for long-term success.

## The Solicitation Procedures

10.     The Debtors commenced solicitation of holders of claims regarding the Plan prior to the Petition Date in accordance with the following Solicitation Procedures and the Bankruptcy Code.  On April 3, 2015, the Debtors caused their solicitation agent, Prime Clerk LLC (the "Solicitation Agent"),[11] to distribute packages containing the Disclosure Statement, the Plan, and ballots (the "Solicitation Packages") to holders of claims entitled to vote to accept or reject the Plan as of the Voting Record Date.  Holders of claims to whom the Solicitation Packages were transmitted were directed in the Disclosure Statement and ballots to follow the instructions contained in the ballots (and described in the Disclosure Statement) to complete and submit their respective ballots to cast a vote to accept or reject the Plan.  Each holder was explicitly informed in the Disclosure Statement and applicable ballot that such holder needed to submit its ballot such that it is actually received by the Solicitation Agent on or before the Voting Deadline to be counted.  Certain holders of claims and interests were not provided a Solicitation Package because such holders are: (a) unimpaired under, and conclusively presumed to accept, the Plan under section 1126(f) of the Bankruptcy Code; or (b) impaired, entitled to receive no distribution on account of such claims or interests under the Plan, and therefore deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.

11.     The Debtors expect to complete a final tabulation of the ballots on or about April 24, 2015.  The Debtors' procedures and standard assumptions for tabulating ballots include:

---

[11]  The Debtors have also applied for authority to retain Prime Clerk LLC as their claims and noticing agent.  *See Application of EveryWare Global, Inc., et. al, . for (A) Appointment of Prime Clerk LLC as Claims and Noticing Agent, and (B) Granting Related Relief,* filed contemporaneously herewith.

| | |
|---|---|
| **Votes Not Counted** | – any ballot that is illegible or contains insufficient information to permit the identification of the holder of the claim or the interest |
| | – any ballot that is not actually received by the Solicitation Agent by the Voting Deadline |
| | – any unsigned ballot |
| | – any ballot that partially rejects and partially accepts the Plan |
| | – any ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan |
| | – any ballot superseded by a later, timely submitted valid ballot |
| | – any improperly submitted ballot |
| **No Vote Splitting** | – holders are required to vote all of their claims within a particular class either to accept or reject the Plan and are not permitted to split any votes |
| **Establishing Claim Amounts** | – claim amounts held by a holder, as applicable, were pre-populated in the ballots. The Debtors determined these amounts as of the Voting Record Date based on the books and records of the applicable administrative agent |

**Basis for Relief**

**I.    Scheduling the Confirmation Hearing.**

12.    Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider the disclosure statement." Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan." Also, the Court may combine the hearing on the adequacy of the Disclosure Statement and the hearing to confirm the Plan. *See* 11 U.S.C. § 105(d)(2)(B)(vi) (authorizing the Court to combine a hearing on approval of a disclosure statement with the confirmation hearing). The Debtors therefore request that the Court schedule a hearing to consider approval of the Disclosure Statement and confirmation of the Plan on or about May 15, 2015.

13.    It is appropriate to set the Confirmation Hearing on or about May 15, 2015. First, the Debtors have requested that the Court schedule the Confirmation Hearing on a date that is more than 35 days after the Petition Date, and the Debtors will provide the Notice consistent

with Bankruptcy Rules 2002 and 3017(a) and section 1128(a) of the Bankruptcy Code. Second, as described above, the Debtors commenced solicitation on April 3, 2015, and solicitation was in accordance with sections 1125(g) and 1126(b) of the Bankruptcy Code. The Disclosure Statement and other solicitation materials were distributed to each holder of a claim entitled to vote on the Plan. Third, the Plan is a consensual prepackaged plan, having already obtained majority support for the Plan from the Term Loan Lenders. Fourth, a combined hearing will reduce the time the Debtors remain in bankruptcy, thereby cutting the costs of administering and funding these chapter 11 cases.

## II.     Objection Deadline and Related Procedures.

14.     Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider . . . any objections or modifications" to the Disclosure Statement. Similarly, Bankruptcy Rule 2002(b) provides that notice shall be given to "the debtor, the trustee, all creditors and indenture trustees [of] not less than 28 days . . . by mail of the time fixed for filing objections and the hearing to consider approval of a disclosure statement or, under § 1125(f), to make a final determination whether the plan provides adequate information so that a separate disclosure statement is not necessary." Under Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."

15.     The Debtors request that the Court set the Objection Deadline at 4:00 p.m., prevailing Eastern Time, on May 8, 2015. Additionally, the Debtors request that the Court require that objections to the Disclosure Statement or confirmation of the Plan must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) state the name and address of the objecting party and the amount and nature of the claim or interest beneficially owned by such entity; (d) state with particularity the legal and factual basis for such objections,

and, if practicable, a proposed modification to the Plan that would resolve such objections; and (e) be filed with the Court with proof of service thereof and served upon the Notice Parties (as defined herein) so as to be actually received by the Objection Deadline.

16.     Setting the Objection Deadline as requested, and requiring that objecting parties satisfy the above-mentioned conditions, is warranted.  First, the Debtors' proposed schedule would provide entities at least 28-days' notice of the Objection Deadline as required by Bankruptcy Rule 2002(b)(1).    Second, the requested relief otherwise complies with the applicable rules and will afford the Court, the Debtors, and other parties in interest sufficient time to consider the objections prior to the Confirmation Hearing.  Third, holders of claims entitled to vote on the Plan will have received notice of the Plan and the restructuring transactions contemplated thereunder at least 33 days prior to the Objection Deadline through the Solicitation Procedures.  No party should require additional time.

## III.    Approval of the Solicitation Procedures.

17.     The Debtors distributed the Solicitation Packages and solicited votes to accept or reject the Plan prior to the Petition Date in accordance with sections 1125 and 1126 of the Bankruptcy Code.  *See* 11 U.S.C. § 1125(g) (debtors may commence solicitation prior to filing chapter 11 petitions); 11 U.S.C. § 1126(b)(2) (holders of claims or interests that accepted or rejected a plan before the commencement of a chapter 11 case are deemed to accept or reject the plan so long as the solicitation provided adequate information).  Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and interests for the purpose of soliciting their votes to accept or reject a plan of reorganization.    Bankruptcy Rule 3017(e) provides that "the court shall consider the procedures for transmitting the documents and information required by [Bankruptcy Rule 3017(d)] to beneficial holders of stock, bonds, debentures, notes, and other securities, determine the adequacy of the procedures and enter any

orders the court deems appropriate." As set forth herein, the Solicitation Procedures comply with the Bankruptcy Code and the Bankruptcy Rules, and the Debtors seek approval of the Solicitation Procedures, the ballots, and the procedures used for tabulations of votes to accept or reject the Plan.

18.     The Debtors continue to solicit votes from certain holders of claims. The Debtors intend to count such votes when evaluating whether the Plan satisfies the requirements of the Bankruptcy Code. By this motion, the Debtors request the authority to include these votes in the final tabulation of votes on the Plan. Section 1125(g) of the Bankruptcy Code allows a debtor to continue soliciting votes for acceptance or rejection of a plan after the commencement of a case without the requirement of a court-approved disclosure statement if the holder was solicited before the commencement of the case in a manner that complied with applicable nonbankruptcy law. As set forth herein, the prepetition solicitation of votes was in accordance with applicable nonbankruptcy law.   The Voting Deadline is 4:00 p.m., prevailing Eastern Time, on April 17, 2015, and the Debtors' continued postpetition solicitation accords with the Bankruptcy Code.

19.     Indeed, similar procedures have been approved in other chapter 11 cases in this and other districts. *See, e.g.*, *In re Sorenson Commcn's, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (approving continued postpetition solicitation of holders of claims under 1125(g) without an approved disclosure statement); *In re Revel AC, Inc.*, No 13-16253 (JHW) (Bankr. D.N.J. Mar. 28, 2013) (same); *In re CHL, Ltd.*, No. 12-12437 (KJC) (Bankr. D. Del. Oct. 4, 2012) (same); *In re CIT Grp., Inc.*, No. 09-16565 (AG) (Bankr. S.D.N.Y. Nov. 3, 2009) (same); *see also In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013) (approving prepackaged solicitation procedures substantially similar to those utilized

here); *In re Maxcom Telecomunicaciones, S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr. D. Del. July 25, 2013) (same); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013) (same); *In re Homer City Funding, LLC*, No. 12-13024 (KG) (Bankr. D. Del. Nov. 7, 2012) (same); *In re Peak Broad., LLC*, No. 12-10183 (PJW) (Bankr. D. Del. Jan. 12, 2012) (same).[12]

**A.      Voting Record Date.**

20.      Bankruptcy Rule 3018(b) provides that, in a prepetition solicitation, the holders of record of the applicable claims against and interests in a debtor entitled to receive ballots and related solicitation materials are to be determined "on the date specified in the solicitation." The Disclosure Statement and ballots clearly identify March 31, 2015, as the date for determining which holders of claims and interests were entitled to vote to accept or reject the Plan.

**B.      Plan Distribution and Voting Deadline.**

21.      Bankruptcy Rule 3018(b) provides that prepetition acceptances and rejections of a plan are valid only if the plan was transmitted to substantially all the holders of claims or interests in the same voting class and the time for voting was not unreasonably short. Furthermore, there is no applicable federal securities law governing the time period for solicitation of votes on the Plan. As set forth in the Preliminary Voting Report, all holders of claims entitled to vote on the Plan were transmitted the Plan on or about April 3, 2015. (Preliminary Voting Report ¶ 2.) As clearly set forth in the Disclosure Statement and ballots, the Voting Deadline is set for April 17, 2015, or at least 14 days after the date of the start of solicitation and distribution of the Plan. This period of time accords with applicable nonbankruptcy law as there is no provision in any applicable securities law or the Term Loan

---

[12]      Because of the voluminous nature of the orders cited here and throughout this motion, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

Facility Documents that requires a set period of time for voting on the Plan. Thus, the Debtors respectfully submit that holders of claims have adequate time to consider the Plan and the Disclosure Statement and submit a ballot before the Voting Deadline. *See, e.g.*, *In re Sorenson Commcn's, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (approving procedures for solicitation of note holders that included voting period of 21 days); *In re Maxcom Telecomunicaciones, S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr. D. Del. July 25, 2013) (approving procedures for solicitation of note holders that included voting period of 20 days); *In re Peak Broad., LLC*, No. 12-10183 (PJW) (Bankr. D. Del. Jan. 12, 2012) (approving solicitation procedures that included voting period of 15 days); *In re TMP Directional Mktg., LLC*, No. 11-13835 (MFW) (Bankr. D. Del. Dec. 7, 2011) (approving solicitation procedures that included voting period of 21 days for general unsecured creditors); *see also Amended Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of New York*, Part VII.A.(1)–(3) (providing that voting periods of 21 days for publicly traded securities, 14 business days for debt that is not publicly traded, and 21 days for "all other claims and interests," all as measured from the date of mailing, will generally be approved as reasonable).

22.    The transaction proposed in the Plan is the product of hard-fought negotiations among the Debtors and Term Loan Lenders holding more than 65% of the Term Loan Facility Claims. In addition, the Plan is supported by certain equity holders holding more than 84% of EveryWare Common Stock and 100% of EveryWare Preferred Stock and the ABL Agent. Prior to the commencement of solicitation, the Plan and Disclosure Statement were subject to extensive review and comment by the steering committee of Term Loan Lenders, which represents the only voting claim holders under the Plan. The Debtors submit that each of the

Term Loan Lenders is a sophisticated investor able to review the Disclosure Statement, review and vote on the Plan, and respond with objections, if any, by the deadlines requested herein. Additionally, as described above, the Voting Deadline is consistent with the terms of the restructuring support agreement.  For these reasons, the Debtors believe that the solicitation period is sufficient and appropriate for holders of claims entitled to vote on the Plan to make an informed decision to accept or reject the Plan.

    **C.**    **The Ballots.**

    23.    Bankruptcy Rule 3017(d) requires the Debtors to transmit a form of ballot, which substantially conforms to Official Form No. 14, only to "creditors and equity security holders entitled to vote on the plan."  Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity holder or an authorized agent, and conform to the appropriate Official Form." As set forth in the Preliminary Voting Report, only the Term Loan Lenders entitled to vote on the Plan were transmitted ballots.  (Preliminary Voting Report ¶ 2.)  The form of ballot used in solicitation is based on Official Form No. 14, and has been modified, as applicable, to address the particular circumstances of these chapter 11 cases to include certain information that the Debtors believe to be relevant and appropriate for holders of claims entitled to vote to accept or reject the Plan.  The form of ballot used in solicitation is annexed as **Exhibit 3** to **Exhibit A** attached hereto.

    **D.**    **Vote Tabulation.**

    24.    As described above, the Debtors are using standard tabulation procedures in tabulating claim holder and interest holder votes.  These procedures are consistent with section 1126(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a).  These tabulation procedures also are consistent with those used in cases in this district.  *See, e.g., In re Sorenson Commcn's, Inc.,*

No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (approving prepackaged vote tabulation procedures substantially similar to those utilized here); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013) (same); *In re Maxcom Telecomunicaciones, S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr. D. Del. July 25, 2013) (same); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013) (same); *In re Homer City Funding, LLC*, No. 12-13024 (KG) (Bankr. D. Del. Nov. 7, 2012) (same).

**E.      The Debtors' Prepetition Solicitation Was Exempt from Registration and Disclosure Requirements Otherwise Applicable Under Nonbankruptcy Law.**

25.      Section 1125(g) of the Bankruptcy Code provides that:

> [A]n acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law.

26.      Section 1126(b) of the Bankruptcy Code provides that:

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if—(1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

27.      Prepetition solicitation must therefore either comply with generally applicable federal or state securities laws and regulations (including the registration and disclosure requirements thereof) or, if such laws and regulations do not apply, the solicited holders must receive "adequate information" under section 1125 of the Bankruptcy Code.

28.      The Debtors respectfully submit that their prepetition solicitation is sheltered under one or more of the exceptions from registration provided by the Securities Act of 1933

(the "Securities Act"), including section 4(a)(2) thereof, state "Blue Sky" laws or any similar rules, regulations, or statutes. Section 4(a)(2) of the Securities Act creates an exemption from nonbankruptcy securities law for transactions not involving a "public offering." 15 U.S.C.A. § 77d(a)(2). With respect to holders of Class 5 Term Loan Facility Claims who will receive securities under the Plan, the Debtors took steps to ensure that all parties entitled to vote on the Plan were accredited investors, as that term is defined in Rule 501 of Regulation D, and that there was no general solicitation in connection with the sale of securities under the Plan. As such, the Debtors' prepetition solicitation does not constitute a public offering because it falls within the exemption set out in section 4(a)(2) of the Securities Act. The Debtors respectfully submit that the requirements of section 1126(b)(1) of the Bankruptcy Code are inapplicable to the Debtors' prepetition solicitation. As discussed more fully below, the Debtors will seek a determination from the Court at the Confirmation Hearing that all solicited holders received "adequate information" as defined by section 1125(a) of the Bankruptcy Code in compliance with section 1126(b)(2) of the Bankruptcy Code.

29.    Debtors in this and other districts have utilized section 4(a)(2) of the Securities Act to exempt their prepetition solicitation from the registration and disclosure requirements otherwise applicable under nonbankruptcy law. *See, e.g., In re Sorenson Commcn's, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (approving solicitation procedures that included section 4(a)(2) exemption); *In re CHL Ltd.*, No. 12-12437 (KJC) (Bankr. D. Del. Oct. 4, 2012) (same); *In re Peak Broad., LLC*, No. 12-10183 (PJW) (Bankr. D. Del. Jan. 12, 2012) (same); *In re Source Interlink Cos.*, No. 09-11424 (KG) (Bankr. D. Del. Apr. 29, 2009) (same); *see also In re Revel AC, Inc.*, No. 13-16253 (JHW) (Bankr. D.N.J. Mar. 28, 2013) (same).

## IV.    Approval of the Disclosure Statement at the Confirmation Hearing.

30.    The Debtors will request that, at the Confirmation Hearing, the Court find that the

Disclosure Statement contains "adequate information" as defined in section 1125(a) of the

Bankruptcy Code.    *See* 11 U.S.C. § 1126(b)(2) (because there is no nonbankruptcy law

governing the solicitation of claim and interest holders prior to the Debtors commencing these

chapter 11 cases, such solicitation must have been based on the Debtors providing such holders

"adequate information").    Additionally, in the event the Court believes that the Disclosure

Statement must at least be conditionally approved for the Debtors' prepetition solicitation to

continue postpetition, the Debtors maintain that such conditional approval is warranted because

the Disclosure Statement contains adequate information.[13]

31.    The Disclosure Statement contains adequate information because it is extensive

and comprehensive.    What constitutes "adequate information" is based on the facts and

circumstances of each case, but the focus is on whether sufficient information is provided to

enable parties to vote in an informed way, and that standard is easily met here.[14]  For instance,

the Disclosure Statement contains descriptions and summaries of, among other things:  (a) both

the Plan and the Debtors' related reorganization efforts;  (b) certain events and relevant

negotiations preceding the commencement of these chapter 11 cases;  (c) the key terms of the

restructuring;  (d) risk factors affecting consummation of the Plan;  (e) a liquidation analysis

setting forth the estimated recovery that holders of claims and interests would receive in a

---

[13]  The Debtors do not believe that the Disclosure Statement must be conditionally approved for the Debtors'
prepetition solicitation to continue postpetition.  However, out of an abundance of caution, the Debtors request
that the Court conditionally approve the Disclosure Statement if the Court deems necessary.

[14]  *See* 11 U.S.C. § 1125(a)(1); *see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337
F.3d 314, 321–22 (3d Cir. 2003) (providing that a disclosure statement must contain "adequate information to
enable a creditor to make an informed judgment about the Plan") (internal quotations omitted); *Oneida Motor
Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (noting that "adequate information" varies
on a case-by-case basis).

hypothetical chapter 7 case; (f) financial information and valuations that are relevant in determining whether to accept or reject the Plan; and (g) federal tax law consequences of the Plan.  In addition, and as noted above, the Disclosure Statement and the Plan were subject to extensive review and comment by the steering committee of Term Loan Lenders and the Debtors' equity sponsors.  As noted above, holders of ABL Facility Claims, who are Unimpaired under the Plan, also had the opportunity to review and comment on the Plan and Disclosure Statement.  Accordingly, the Debtors submit that the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code and should be approved.

## V.      Waiver of Certain Solicitation Package Mailings.

32.      The Debtors request that the Court waive the requirement that they mail a copy of the Solicitation Package to holders of claims and interests presumed to accept the Plan.  *See Fed. R. Bankr. P.* 3017(d) (requiring transmission of a court-approved disclosure statement to, *inter alia,* classes of unimpaired creditors and equity security holders unless the court orders otherwise).  Bankruptcy Rule 3017(d) applies, in relevant part, "[u]pon approval of a disclosure statement."  Accordingly, Bankruptcy Rule 3017 may be deemed not to apply here considering the prepetition solicitation process employed.  *See also* 11 U.S.C. § 1126(f)–(g) (providing that solicitation of parties either presumed to accept or deemed to reject is unnecessary).  But the Debtors make this request out of an abundance of caution.  Distributing the Solicitation Packages to non-voting creditors is costly and administratively burdensome.  The Debtors submit that their cash should be preserved for the benefit of all stakeholders and that their resources should not be distracted by having to satisfy this mailing requirement.  The Debtors also made the Solicitation Package (excluding the ballots) available at no cost on their website maintained in the chapter 11 cases: http://cases.primeclerk.com/everyware.

## VI.    Approval of the Form and Manner of the Notice.

33.    Bankruptcy Rule 2002 requires at least 28-days' notice to all holders of claims and interests of the time fixed for filing objections to the hearing on confirmation of a chapter 11 plan. Fed. R. Bankr. P. 2002(b), (d).[15]  To that end, the Debtors request approval of the Notice, substantially in the form of **Exhibit 1** annexed to **Exhibit A** attached hereto.  In accordance with Bankruptcy Rules 2002 and 3017(d), the Notice will:  (a) provide notice of the commencement of these chapter 11 cases; (b) provide a brief summary of the Plan; (c) disclose the date and time of the Confirmation Hearing; (d) disclose the date and time of the Objection Deadline and the procedures for objecting to the Disclosure Statement and the Plan; and (e) provide the record date for receiving distributions under the Plan.

34.    The Notice will be served upon the Debtors' creditor matrix and all interest holders of record, which service will occur by April 9, 2015, subject to the Court's availability. The Notice likewise will be served upon the Notice Parties (as defined below).

35.    Bankruptcy Rule 2002(*l*) also permits the Bankruptcy Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  Prior to the Confirmation Hearing, the Debtors propose to publish a notice in the *New York Times* (*National Edition*) within five business days following entry of the Order, substantially in the form of **Exhibit 2** annexed to **Exhibit A** attached hereto (the "Publication Notice").  In addition, the Publication Notice will be available on the Debtors' website at http://cases.primeclerk.com/everyware.  The Debtors believe that the Publication Notice will

---

[15]  Bankruptcy Rule 3017(a) contains a similar requirement with respect to the hearing on approval of a disclosure statement.  Here, the Debtors do not seek separate approval of the Disclosure Statement under section 1125(b) of the Bankruptcy Code.  Such approval is not required at the present time because the Disclosure Statement was transmitted prepetition.  Rather, the Debtors will seek approval of the Disclosure Statement, including a finding that the Disclosure Statement contained "adequate information" as that term is used by section 1125 of the Bankruptcy Code, at the Confirmation Hearing pursuant to section 1125(g) of the Bankruptcy Code.

provide sufficient notice of the pending approval of the Disclosure Statement, the Confirmation Hearing, and the Objection Deadline to entities who will not otherwise receive notice by mail as provided herein and through the Solicitation Procedures.

### VII. Cause Exists for the U.S. Trustee Not To Convene a Meeting of Creditors or Equity Holders if the Plan Is Confirmed Within 75 Days of the Petition Date.

36.     Section 341 of the Bankruptcy Code allows a court to waive the requirement of a meeting of creditors or equity holders if a debtor has filed a plan on the petition date and solicited acceptances of a plan prior to the commencement of a chapter 11 case.    More specifically, section 341(e) of the Bankruptcy Code provides that:

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

37.     The Debtors filed the Plan contemporaneously with this motion on the Petition Date, and the Debtors commenced solicitation of votes to accept or reject the Plan on April 3, 2015, prior to the Petition Date, thereby satisfying the threshold statutory requirement.

38.     Cause exists to waive the section 341 meeting as set forth herein because unsecured creditors holding allowed claims will be paid in full under the Plan and other "first day" relief sought by the Debtors.   In addition, holders of Class 5 Term Loan Facility Claims will not be harmed because they are adequately represented by the steering committee of Term Loan Lenders.   As set forth above, the Debtors negotiated the terms of the Plan with the Term Loan Lenders, consisting of a significant percentage of the holders of Class 5 Term Loan Facility Claims, respectively.   Those negotiations resulted in execution of the restructuring support agreement by creditors holding approximately 65% in amount of Class 5 Term Loan Facility Claims.   The restructuring support agreement, moreover, requires the Debtors to confirm the

Plan within a prescribed timeframe, the failure of which could jeopardize certain stakeholders' previously obtained support for the Plan. The Debtors thus respectfully submit that such creditors and equity holders are not prejudiced by the lack of a section 341 meeting. Additionally, the Debtors intend to proceed to confirm the Plan as quickly as possible. A section 341 meeting may force the Debtors to delay the Confirmation Hearing, thereby causing additional administrative expenses and professional fees to the detriment of the Debtors' estates. For these reasons, the Debtors submit that sufficient "cause" exists to waive the requirement of a section 341 meeting as set forth herein.

39.    Courts in this district have waived the requirement of a section 341 meeting for a period of time, including for a period of 75 days, under similar circumstances and thus the relief requested is reasonable. *See, e.g.*, *In re Sorenson Commcn's, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (waiving section 341 meeting provided that plan was confirmed within 64 days of petition date); *In re Physiotherapy Holdings, Inc.*, No. 13-2965 (KG) (Bankr. D. Del. Nov. 14, 2013) (same); *In re Maxcom Telecomunicaciones, S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr. D. Del. July 25, 2013) (same, provided that plan was confirmed within 60 days of petition date); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013) (same, provided that plan was confirmed within 75 days of the petition date); *In re Homer City Funding LLC*, No. 12-13024 (KG) (Bankr. D. Del. Nov. 7, 2012) (same, provided that plan was confirmed within 60 days of petition date).

## Notice

40.    The Debtors will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the ABL

Facility; (d) the administrative agent under the Term Loan Facility; (e) the parties to the Support Agreement; (f) the United States Environmental Protection Agency; (g) the United States Attorney's Office for the District of Delaware; (h) the Internal Revenue Service; (i) the office of the attorneys general for the states in which the Debtors operate; (j) the Securities and Exchange Commission; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

41.     No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Wilmington, Delaware
Dated:  April 7, 2015

PACHULSKI STANG ZIEHL & JONES LLP

*Laura Davis Jones*

Laura Davis Jones (DE Bar No. 2436)
Colin R. Robinson (DE Bar No. 5524)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
Email:        ljones@pszjlaw.com
              crobinson@pszjlaw.com
              pkeane@pszjlaw.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Ross M. Kwasteniet (*pro hac vice* pending)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        patrick.nash@kirkland.com
              ross.kwasteniet@kirkland.com

*Proposed Counsel for the*
*Debtors and Debtors in Possession*