IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| EVERYWARE GLOBAL, INC., *et al.*,[1] | ) ) | Case No. 15-10743 (LSS) |
|  | ) |  |
| Debtors. | ) ) | (Joint Administration Requested) |

**DECLARATION OF RICHARD MORGNER IN SUPPORT OF THE
MOTION OF EVERYWARE GLOBAL, INC., *ET AL.*, FOR ENTRY OF INTERIM AND
FINAL ORDERS (A) AUTHORIZING POSTPETITION FINANCING, (B) GRANTING
LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE
CLAIMS, (C) AUTHORIZING THE USE OF CASH COLLATERAL, (D) GRANTING
ADEQUATE PROTECTION, (E) MODIFYING THE AUTOMATIC STAY,
(F) SCHEDULING A FINAL HEARING, AND (G) GRANTING RELATED RELIEF**

I, Richard Morgner, hereby declare under penalty of perjury as follows:

1. I submit this declaration (this "Declaration") in support of the *Motion of Everyware Global, Inc., et al., for Entry of Interim and Final Orders (A) Authorizing Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing the Use of Cash Collateral, (D) Granting Adequate Protection, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief* (the "DIP Motion"), filed contemporaneously herewith by the above-captioned debtors and debtors in possession (collectively, the "Debtors"), which seeks approval of the Debtors' senior secured priming debtor in possession financing, consisting of a $40.0 million term loan (the "DIP Term Facility") and a $60.0 million revolving credit facility (the "DIP ABL Facility,"

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Anchor Hocking, LLC (6923); Buffalo China, Inc. (9731); Delco International, Ltd. (7553); EveryWare, LLC (2699); EveryWare Global, Inc. (4553); Kenwood Silver Company, Inc. (2286); Oneida Food Service, Inc. (7321); Oneida International Inc. (4774); Oneida Ltd. (5700); Oneida Silversmiths Inc. (6454); Sakura, Inc. (9359); THC Systems, Inc. (9103); Universal Tabletop, Inc. (4265). The location of the Debtors' service address is: 519 North Pierce Avenue, Lancaster, Ohio 43130.

KE 35684290.5

and together with the DIP Term Facility, the "DIP Facilities") and the consensual use of cash collateral ("Cash Collateral"), amongst other things.[2]

2. The statements in this Declaration are, except where specifically noted, based on either my personal knowledge or opinion, on information that I have received from the Debtors' employees or advisors, or employees of Jefferies LLC ("Jefferies") working directly with me or under my supervision, direction, or control, or from the Debtors' records maintained in the ordinary course of their business. I am not being specifically compensated for this testimony other than through payments received by Jefferies as a professional to be retained by the Debtors. If I were called upon to testify, I could and would competently testify to the facts set forth herein on that basis. I am authorized to submit this Declaration on behalf of the Debtors.

**Professional Background and Qualifications**

3. I am the Joint Global Head of the Recapitalization & Restructuring Group at Jefferies, a global investment banking firm founded over 50 years ago, with its principal office located at 520 Madison Avenue, 10th Floor, New York, NY 10022. Jefferies is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation. Jefferies, together with its investment banking advisory affiliates has approximately 3,900 employees located in more than 30 offices around the world. Jefferies and its senior professionals have extensive expertise providing investment banking services to financially distressed companies, creditors, committees, equity holders, asset purchasers, and other

---

[2] The significant terms of the DIP Facilities are set forth in greater detail in the DIP Motion. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the DIP Motion.

constituencies in reorganization proceedings and complex financial restructurings, both in and out of court.

4. I have more than 22 years of investment banking and restructuring experience. Since joining Jefferies in 2009, I have provided investment banking expertise, and distressed mergers and acquisition and financing advice to companies, lenders, and investors in both in- and out-of-court restructurings. Prior to joining Jefferies, I was a Managing Director and Co-Head of the mergers and acquisitions group at Miller Buckfire, where my primary responsibilities included advising companies and investors in restructuring, distressed mergers and acquisitions, distressed financing, and special situations.

### Jefferies Retention

5. In May 2014, the special committee of the board of directors engaged Jefferies under a prior engagement letter, and in March 2015, the Debtors engaged Jefferies to act as their investment banker in connection with the Debtors' current restructuring initiatives. In connection with our most recent engagement, Jefferies has rendered investment banking services to the Debtors in connection with the evaluation of strategic alternatives for restructuring their debt obligations and improving their liquidity and overall financial condition. Additionally, Jefferies has worked closely with the Debtors' management and other professionals retained by the Debtors with respect to these chapter 11 cases and has become well-acquainted with the Debtors' capital structure, liquidity needs, and business operations.

### The Debtors' Liquidity Needs

6. The Debtors are in need of an immediate infusion of liquidity. As of the date hereof (the "Petition Date"), the Debtors have limited cash on hand with which to operate their businesses and fund these chapter 11 cases. Together with the Debtors' management, Jefferies and the Debtors' other advisors analyzed the incremental liquidity that would be necessary to

maintain operations in connection with the filing of these chapter 11 cases. Among other things, the proceeds from the DIP Facilities, together with anticipated cash flow from operations, will be used to honor employee wages and benefits, procure goods and services integral to the Debtors' ongoing business operations, fund certain operational expenses, and should allow the Debtor to maintain favorable relationships with their vendors, suppliers, employees, and customers, and satisfy working capital needs in the ordinary course.

7. As part of this process, Jefferies and the Debtors' other advisors reviewed and analyzed the 13–week cash flow forecast that the Debtors created with the assistance of their advisors. The Debtors' 13–week cash flow forecast takes into account anticipated cash receipts and disbursements during the projected period and considers a number of factors, including the effect of the chapter 11 filing on the operations of the business, fees, and interest expense associated with DIP financing, professional fees, and required vendor payments.

### The Debtors' Efforts to Obtain Postpetition Financing

8. I do not believe that alternative sources of financing are readily available to the Debtors. Additionally, I do not believe it would prudent, or even possible, to administer the Debtors' chapter 11 estates on a "cash collateral" basis. Without access to the DIP Facilities, the Debtors have extremely limited cash on hand, and I do not expect the Debtors to be able to generate sufficient levels of operating cash flow in the ordinary course of business to cover their working capital needs and the projected costs of these chapter 11 cases. In addition, I am advised that substantially all the Debtors' assets are encumbered by liens arising under the Prepetition Term Loan Agreement and Prepetition ABL Credit Agreement. As a result, I do not believe that third-party debtor-in-possession financing would be reasonably available given the realities imposed by the Debtors' existing capital structure.

9. Indeed, based on my experience, sources of financing (outside of the Debtors' Prepetition Lenders) would likely insist on priming the Prepetition Lenders, and, as a result, such outside financing is not a feasible option in my opinion. Furthermore, without the consent of the Prepetition Lenders, any attempts at non-consensual priming of the Prepetition Lenders' liens would likely involve a costly, extended, and contested hearing. I do not believe the Debtors would be able to demonstrate adequate protection for the non-consensual priming of the prepetition Lenders' liens. Moreover, I believe that any such outside financing would expose the Debtors to the execution risk associated with a new lender transaction, including material timing and due diligence constraints, necessarily involving the payment of additional professional fees.

10. Instead, the proposed DIP Facilities offered by the Prepetition Term Lenders and Prepetition ABL Lenders (i.e., the DIP Lenders) will allow the Debtors to avoid the need to engage in a costly and time-consuming priming fight at the outset of these chapter 11 cases. Accordingly, I believe that the DIP Facilities provides, on balance, a more attractive postpetition financing proposal than alternative postpetition financing obtained from a third-party.

**The Debtors Select the Proposed DIP Financing**

11. Based on the foregoing, it is my belief that the DIP Facilities represent the best option available to address the Debtors' immediate liquidity needs, and that the terms and conditions of the DIP Documents are reasonable and appropriate under the circumstances. The DIP Facilities are the product of extensive good faith, arms'-length negotiations with the DIP Lenders and are an essential component of a broader restructuring transaction contemplated by the Support Agreement and the Plan, which were themselves the product of significant negotiations prior to the Petition Date. Moreover, I believe that the DIP Facilities represent the only viable financing available that would not require the Debtors to seek to prime the Prepetition Lenders' liens on a nonconsensual basis.

12. The proposed DIP Facilities will provide the Debtors with immediate access to liquidity that is necessary to ensure that the Debtors' businesses are stabilized and value is maximized. Accordingly, I believe that the DIP Facilities should be approved on the terms and conditions described in the DIP Motion.

## **Conclusion**

13. I believe that given the circumstances, the terms of the DIP Facilities are reasonable and appropriate. I also believe that, based on the Debtors' projections and the anticipated short length of these chapter 11 cases, given their prepackaged nature, the proposed DIP Facilities will provide the Debtors with the necessary liquidity to effectively run their chapter 11 process.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

| | |
|---|---|
| Dated: April 8, 2015 | */s/ Richard Morgner* |
| | Richard Morgner |
| | Joint Global Head, Restructuring & Recapitalization |
| | Jefferies LLC |
| | |
| | *Proposed Financial Advisor and* |
| | *Investment Banker to the Debtors* |