## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ X
                                 :

In re:                       :    Chapter 11

                                 :

EVERYWARE GLOBAL, INC., *et al.*,[1]   :    Case No. 15-10743 (LSS)

                                 :

           Debtors.     :    (Jointly Administered)

                                 :

------------------------------------------------------------ X  **Re: Docket Nos. 19, 29, 33, and 67**

### FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS AND DEBTORS IN POSSESSION TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of EveryWare Global, Inc. and certain of its affiliates, as debtors and debtors in possession in the above-captioned cases (each, a "Debtor" and collectively, the "Debtors") for entry of an interim order and a final order (this "Final Order") under sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1), 364(e), and 507 of title 11 of the United States Code, 11 U.S.C. §§101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), *inter alia* (a) authorizing Anchor Hocking LLC ("Anchor") and Oneida Ltd. ("Oneida"; together with Anchor, the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Anchor Hocking, LLC (6923); Buffalo China, Inc. (9731); Delco International, Ltd. (7553); EveryWare, LLC (2699); EveryWare Global, Inc. (4553); Kenwood Silver Company, Inc. (2286); Oneida Food Service, Inc. (7321); Oneida International Inc. (4774); Oneida Ltd. (5700); Oneida Silversmiths Inc. (6454); Sakura, Inc. (9359); THC Systems, Inc. (9103); Universal Tabletop, Inc. (4265). The location of the Debtors' service address is: 519 North Pierce Avenue, Lancaster, Ohio 43130.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

"Borrowers") to obtain, and each of the other Debtors to guarantee, postpetition financing in the form of (i) a term loan facility as set forth in that certain Debtor-in-Possession Term Loan Agreement attached as Exhibit 1 to the Interim Order (as amended, supplemented or otherwise modified from time to time, the "DIP Term Loan Agreement"), by and among the Borrowers, Universal Tabletop, Inc., Wilmington Trust, National Association, as administrative agent (in such capacity and its capacity as the collateral agent for the DIP Term Facility (as defined below), the "DIP Term Agent"), and the lenders party thereto (the "DIP Term Lenders"), of up to $40 million (the "DIP Term Facility"), of which $40 million was available on an interim basis, under the terms of the Interim Order (as defined below) and the other DIP Term Loan Documents (as defined below), and (ii) a revolving credit and letter of credit facility as set forth in that certain Ratification and Amendment Agreement attached as Exhibit 2 to the Interim Order (as amended, supplemented or otherwise modified from time to time, the "DIP ABL Credit Agreement"), by and between the Borrowers, the Guarantors, Wells Fargo Bank, National Association, as administrative agent and collateral agent (in such capacities, the "ABL Agent"; together with the DIP Term Agent, the "DIP Agents" and each, a "DIP Agent"), and the lenders party thereto (the "ABL Lenders"; together with the DIP Term Lenders, the "DIP Lenders"), of up to $60,000,000 million (the "DIP ABL Credit Facility"; together with the DIP Term Facility, the "DIP Facilities"), under the terms of the Interim Order and the other DIP ABL Credit Documents (as defined below), (b) authorizing the use of Cash Collateral (as defined below) by the Debtors effective as of the Petition Date, (c) allowing superpriority administrative expense status of the DIP Term Obligations (as defined below) and the DIP ABL Obligations (as defined below) in the Debtors' chapter 11 cases (the "Chapter 11 Cases") and authorizing the Debtors to grant to the DIP Term Agent on its behalf and on behalf of the DIP Term Lenders and the ABL

2

Agent on behalf of the ABL Lenders automatically perfected security interests in and liens on the Collateral (as defined below) to the extent set forth herein, (d) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and this Final Order, (e) granting adequate protection to the Prepetition Term Agent (as defined below), the Prepetition Term Lenders (as defined below), the ABL Agent, and the ABL Lenders, (f) scheduling a final hearing to consider entry of this Final Order, and (g) granting related relief; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court on April 9, 2015 (the "Interim Hearing") to consider entry of the Interim Order; and the Court having determined that the legal and factual bases set forth in the Motion, the *Declaration of Joel Mostrom in Support of First Day Motions*, dated as of April 7, 2015 [Docket No. 18] (the "First Day Declaration"), the Declaration of Richard Morgner in support of the Motion, dated as of April 7, 2015 [Docket No. 33] (the ""Morgner Declaration"), and at the Interim Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and the Court having entered on April 10, 2015, after the Interim Hearing, the Interim Order granting the relief requested in the Motion as set forth in the Interim Order; and the Court having found that the Debtors' notice of Motion, the Interim Hearing and the Final Hearing (as defined below) was appropriate and no other notice need be provided; and the Court having held and concluded a final hearing on the Motion on April 28, 2015 (the "Final Hearing"); and upon the record of the Interim Hearing and all of the proceedings had before the Court; and after due

deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND CONCLUDED THAT:

A.    <u>Disposition</u>. The Motion is granted on a final basis in accordance with the terms of this Final Order. Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled are hereby denied and overruled.

B.    <u>Commencement of Cases</u>. On April 7, 2015 (the "<u>Petition Date</u>"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are in possession of their properties and are continuing to operate their businesses as debtors and debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. No official committee of unsecured creditors (a "<u>Committee</u>") has been appointed in the Chapter 11 Cases.

C.    <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the Chapter 11 Cases, the Motion and the parties and property affected hereby, pursuant to 28 U.S.C. §§ 157(b) and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The entry of this Final Order is consistent with Article III of the United States Constitution. Venue of the Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief sought herein are sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1), 364(e), and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014, and Local Rule 4001-2.

D.    <u>Interim Order</u>. At the Interim Hearing, the Court entered that certain *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtors and Debtors in Possession to Obtain Postpetition*

4

*Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Super-Priority Claims, (IV) Granting Adequate Protection to Prepetition Secured Lenders, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 68] (the "Interim Order"), whereby the Court approved the DIP Facilities and the Debtors' use of Cash Collateral on an interim basis pending the Final Hearing and entry of this Final Order.  Pursuant to the Interim Order, the Final Hearing to consider final approval of the DIP Facilities and use of Cash Collateral was scheduled for April 28, 2015 at 2:00 p.m. (prevailing Eastern Time).

E.      Adequate Notice.  Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors by electronic mail, facsimile, hand delivery or overnight delivery to the following parties and/or their respective counsel as indicated below: (a) the Office of the U.S. Trustee; (b) counsel to the Prepetition Term Agent; (c) counsel to the ABL Agent; (d) counsel to the ad hoc committee of Prepetition Term Lenders (the "Prepetition Term Lender Ad Hoc Committee"); (e) creditors holding the thirty (30) largest unsecured claims as set forth in the consolidated list filed with the Debtors' voluntary petitions; and (f) all parties requesting service in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

F.      The Prepetition Obligations.  The Debtors acknowledge, admit, represent, stipulate and agree that:

(i)      *Prepetition Term Loan Agreement.*  Prior to the Petition Date, pursuant to the terms and conditions set forth in that certain (a) Term Loan Agreement, dated May 21, 2013 (as amended, modified, supplemented or restated from time to time, the Prepetition Term Loan Agreement"), by and among the Borrowers, Universal Tabletop, Inc., the lenders party thereto (the "Prepetition Term Lenders"), and Deutsche Bank AG New York Branch, in its capacity as

5

administrative agent (in such capacity and its capacity as collateral agent with respect to the Prepetition Term Loan Facility, and together with any of its successors, the "Prepetition Term Agent"); and (b) all other agreements, documents and instruments executed and/or delivered with, to or in favor of the Prepetition Term Agent and/or the Prepetition Term Lenders, including, without limitation, the Intercreditor Agreement (as defined below), all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto (all the foregoing, together with the Prepetition Term Loan Agreement, as all of the same have been or may be supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date or in connection with any resignation or appointment of the role of the Prepetition Term Agent, collectively, the "Prepetition Term Loan Financing Documents"), the Prepetition Term Lenders agreed to make term loans to the Borrowers and to otherwise extend credit to the Debtors, in an aggregate principal amount of up to $250.0 million (the "Prepetition Term Loan Facility"). All obligations of the Debtors arising under the Prepetition Term Loan Agreement or any other Prepetition Term Loan Financing Document, including under the Prepetition Term Loan Facility, and all loans, advances, debts, liabilities, principal, accrued or hereafter accruing interest, fees (including fees of the Prepetition Term Agent), costs, charges, indemnification obligations, expenses (including any and all reasonable attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition Term Loan Financing Documents), or other amounts, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable, in

respect of any of the Debtors' obligations under the Prepetition Term Loan Financing Documents, including all "Obligations" as defined in the Prepetition Term Loan Agreement, shall hereinafter be referred to collectively as the "<u>Prepetition Term Loan Obligations</u>."

        (ii)    *Prepetition ABL Agreement.* Prior to the Petition Date, pursuant to the terms and conditions set forth in that certain (a) Second Amended and Restated Loan and Security Agreement, dated May 21, 2013 (as amended, modified, supplemented or restated from time to time, the <u>Prepetition ABL Agreement</u>"), by and among the Borrowers, Universal Tabletop, Inc. and each Subsidiary (as defined therein) of Universal Tabletop, Inc. party thereto as guarantors, the ABL Lenders from time to time party thereto and the ABL Agent; and (b) all other agreements, documents and instruments executed and/or delivered with, to or in favor of the ABL Agent and/or the ABL Lenders, including, without limitation, the Intercreditor Agreement, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto (all the foregoing, together with the Prepetition ABL Agreement, as all of the same have been supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "<u>Prepetition ABL Financing Documents</u>"; together with the Prepetition Term Loan Financing Documents, the "<u>Prepetition Financing Documents</u>"), the ABL Lenders agreed to make revolving loans to, and issue letters of credit for the account of, the Borrowers and to otherwise extend credit to the Debtors, in an aggregate principal amount not to exceed $60.0 million (the "<u>Prepetition ABL Facility</u>"; together with the Prepetition Term Loan Facility, the "<u>Prepetition Facilities</u>"). All obligations of the Debtors arising under the Prepetition ABL

7

Agreement or any other Prepetition ABL Financing Document, including under the Prepetition ABL Facility, and all loans, advances, debts, liabilities, principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any and all reasonable attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition ABL Financing Documents), of any kind or nature, whether or not evidenced by any note, agreement or other instrument, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations under the Prepetition ABL Financing Documents shall hereinafter be referred to collectively as the "Prepetition ABL Obligations" (together with the Prepetition Term Loan Obligations, the "Prepetition Obligations"). The Prepetition ABL Obligations and the DIP ABL Obligations (as hereinafter defined) are sometimes collectively referred to herein as the "ABL Obligations."

(iii)    *Guarantors*.  The Prepetition Term Loan Obligations and the Prepetition ABL Obligations are guaranteed by Universal Tabletop, Inc. and each wholly-owned domestic subsidiary of the Borrowers under the terms of the applicable Prepetition Term Loan Financing Documents and the Prepetition ABL Financing Documents, respectively (collectively, the "Guarantors").

(iv)    *Prepetition Term Liens*.  Pursuant to certain Prepetition Term Loan Financing Documents, each Debtor granted to the Prepetition Term Agent for its benefit and the benefit of the Prepetition Term Lenders, to secure the Prepetition Term Loan Obligations, a security interest in and continuing lien on (the "Prepetition Term Liens") all of the "Collateral" (as defined in the Prepetition Term Loan Agreement), subject to certain exclusions as set forth in

the Prepetition Term Loan Financing Documents (collectively, the "Prepetition Term Loan Collateral").

      (v)    *Prepetition ABL Liens*.  Pursuant to certain Prepetition ABL Financing Documents, each Debtor granted to the ABL Agent for the benefit of the ABL Lenders, to secure the Prepetition ABL Obligations a security interest in and continuing lien on (the "Prepetition ABL Liens"; together with the Prepetition Term Liens, the "Prepetition Liens") all of the "Collateral" as defined in the Prepetition ABL Credit Agreement, subject to certain exclusions as set forth in the Prepetition ABL Credit Agreement (collectively, the "Prepetition ABL Collateral"; together with the Prepetition Term Loan Collateral, the "Prepetition Collateral").

      (vi)    *Prepetition Intercreditor Agreement*.  The Debtors, the ABL Agent and the Prepetition Term Agent are parties to that certain ABL Intercreditor Agreement dated as of May 21, 2013 (as amended, supplemented or otherwise modified from time to time, the "Intercreditor Agreement"), which governs (x) the relative rights against the Debtors of the Prepetition Term Lenders and the ABL Lenders in respect of the respective Prepetition Obligations and the Prepetition Collateral and (y) the relative priorities of the Prepetition Liens in respect of the Prepetition Collateral. The Intercreditor Agreement remains in full force and effect in accordance with the terms thereof, subject to and as modified by the terms and provisions of this Final Order and the Interim Order.

      (vii)    *No Other Liens*.  As of the Petition Date, other than as expressly permitted under the Prepetition Term Loan Financing Documents and the Prepetition ABL Financing Documents (including any "Permitted Liens" as such term is defined in the applicable Prepetition Term Loan Financing Documents and Prepetition ABL Financing Documents,

respectively), there were no liens on or security interests in the Prepetition Collateral other than the Prepetition Liens.

(viii)    *Restructuring Support Agreement.*    After good faith, arm's length negotiations, the Debtors, certain holders of existing preferred stock and existing common stock issued by EveryWare Global, Inc., and certain Prepetition Term Lenders (owning more than one-half in dollar amount of the Prepetition Term Loan Obligations) entered into that certain Restructuring Support Agreement, dated as of March 31, 2015 (as may be amended, supplemented, restated, or modified from time to time in accordance with the terms thereof, the "RSA"), in which the parties thereto agreed, *inter alia*, to engage in various transactions to restructure the Debtors' obligations under the Prepetition Term Loan Financing Documents and its capital structure pursuant to the Debtors' prepackaged plan of reorganization attached as an exhibit to the RSA (the "Prepackaged Plan").    In connection with the RSA, certain of the Prepetition Term Lenders have agreed to provide the Debtors additional funding as contemplated by, and subject to the terms and conditions of, the DIP Term Facility to preserve the Debtors' business operations and to consummate the transactions contemplated by the RSA.

G.    Debtors' Stipulations.  Subject to the rights of any Committee or other parties-in-interest as and to the extent set forth in paragraph 32 below, the Debtors acknowledge, admit, represent, stipulate and agree that:

(i)    *Prepetition Term Loan Obligations.*    As of the Petition Date, the Prepetition Term Loan Obligations for which the Debtors were truly and justly indebted to the Prepetition Term Agent and Prepetition Term Lenders, without defense, counterclaim, recoupment or offset of any kind, aggregated not less than approximately $248,550,836.24, plus

accrued but unpaid interest and other unpaid fees, charges, costs and expenses as required under the terms of the Prepetition Term Loan Financing Documents.

(ii)    *Prepetition Term Liens Not Subject to Avoidance*.  The Prepetition Term Liens (a) constitute valid, binding, enforceable, nonavoidable, and properly perfected liens on the Prepetition Collateral, (b) prior to entry of the Interim Order, were senior in priority over any and all liens except for "Permitted Liens" as defined in, and to the extent expressly permitted under, the Prepetition Term Loan Agreement, and except to the extent the Prepetition Term Liens were subordinated to the Prepetition ABL Liens in respect of certain Prepetition Collateral, as expressly set forth in the Interim Order, this Final Order, the DIP Loan Documents, and the Intercreditor Agreement, and (c) are not subject to avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any other applicable law or regulation (except insofar as such liens are subordinated to the DIP Term Liens, the Adequate Protection Liens (as defined below) in respect of the ABL Lenders and the Prepetition Term Lenders, and the Carve-Out (each term as defined below) in accordance with the provisions of this Final Order, the Interim Order, the other DIP Loan Documents and the Intercreditor Agreement).

(iii)    *Prepetition ABL Obligations*.  As of the Petition Date, the Prepetition ABL Obligations for which the Debtors were truly and justly indebted to the ABL Lenders, without defense, counterclaim, recoupment or offset of any kind, aggregated not less than approximately $43,355,608.00, plus accrued but unpaid interest and other unpaid fees, charges, costs and expenses as required under the terms of the Prepetition ABL Financing Documents.

(iv)    *Prepetition ABL Liens Not Subject to Avoidance*.  The Prepetition ABL Liens (a) constitute valid, binding, enforceable, nonavoidable, and properly perfected liens on the

11

Prepetition Collateral, (b) prior to the entry of the Interim Order, were senior in priority over any and all liens except for "Permitted Liens" as defined in and to the extent expressly permitted under the Prepetition ABL Credit Agreement and except to the extent the Prepetition ABL Liens are subordinated to the Prepetition Term Liens in respect of certain Prepetition Collateral, as expressly set forth in the Interim Order, this Final Order, the DIP Loan Documents, and the Intercreditor Agreement, (c) prior to the entry of the Interim Order, were senior in priority (except for (i) the Prepetition Term Liens and (ii) "Permitted Liens" as defined in and to the extent expressly permitted under the Prepetition ABL Credit Agreement) over any and all other liens on the Term Priority Collateral, (d) are not subject to avoidance, reductions, recharacterization, set-off, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any other applicable law or regulation (except insofar as such liens are subordinated to the DIP Term Liens (as defined below), the Adequate Protection Liens in respect of the ABL Lenders and the Prepetition Term Lenders in accordance with the provisions of this Final Order, the Interim Order, the other DIP Loan Documents and the Intercreditor Agreement), and (e) are fully secured as of the Petition Date, as the value of such liens in the Prepetition Collateral exceeds the amount of the Prepetition ABL Obligations.

(v)     *No Claims.*  The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against any of the Prepetition Term Agent, the Prepetition Term Lenders, the ABL Agent or the ABL Lenders with respect to the Prepetition Financing Documents, the Prepetition Obligations, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge,

recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510, 541 or 542 through 553, inclusive, of the Bankruptcy Code.

(vi) *Indemnity.* The Prepetition Term Agent, the Prepetition Term Lenders, the ABL Agent, the ABL Lenders, the DIP Term Agent, the DIP Term Lenders, and all successors thereof, have acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting or obtaining requisite approvals of, as applicable, the RSA, the DIP Facilities, and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Adequate Protection Liens, any challenges or objections to the DIP Facilities or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing. Accordingly, the Prepetition Term Agent, the Prepetition Term Lenders, the DIP Term Agent, the DIP Term Lenders, the ABL Agent and the ABL Lenders, and all successors thereof, shall be and hereby are indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto, provided that no such parties will be indemnified for any cost, expense or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence or willful misconduct. No exception or defense in contract, law or equity exists as to any obligation set forth, as the case may be, in this paragraph G(vi), in the Prepetition Financing Documents or in the DIP Loan Documents, to indemnify and/or hold harmless the Prepetition Term Agent, the Prepetition Term Lenders, the DIP Term Agent, the DIP Term Lenders, the ABL Agent or the ABL Lenders, or any successors thereof, as the case may be.

13

(vii)    *Release.*  The Debtors hereby stipulate and agree that they forever and irrevocably release, discharge and acquit the Prepetition Term Agent, the DIP Term Agent, the ABL Agent, and all former, current and future Consenting Term Lenders (as defined in the Prepackaged Plan), DIP Term Lenders, and ABL Lenders, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys and agents, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "Releasees") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' fees), debts, liens, actions and causes of action of any and every nature whatsoever relating to, as applicable, the DIP Facilities, the DIP Loan Documents, the Prepetition Facilities, the Prepetition Financing Documents and/or the transactions contemplated hereunder or thereunder including, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Term Agent, the Prepetition Term Lenders, the DIP Term Agent, the DIP Term Lenders, the ABL Agent, and the ABL Lenders.  The Debtors further waive and release any defense, right of counterclaim, right of set-off or deduction to the payment of the Prepetition Obligations and the DIP Obligations which the Debtors now have or may claim to have against the Releasees, arising out of, connected with or relating to any and all acts, omissions or events occurring prior to the Bankruptcy Court entering this Final Order.

H.    Cash Collateral.  For purposes of this Final Order the term "Cash Collateral" shall mean and include any and all "cash collateral" as defined in section 363 of the Bankruptcy Code,

in which the Prepetition Term Agent on its behalf and on behalf of the Prepetition Term Lenders or the ABL Agent on behalf of the ABL Lenders has a lien or security interest, in each case whether existing on the Petition Date, arising pursuant to the Interim Order or this Final Order, or otherwise; provided, that, for all purposes under this Final Order, all references to the Debtors' use of the ABL Agent's and the ABL Lenders' Cash Collateral shall be limited to mean the Debtors' use of proceeds of the loans extended to the Debtors under the DIP ABL Credit Facility.

I.      Use of DIP Facilities and Cash Collateral.  The Debtors have an immediate and critical need to use the DIP Facilities and Cash Collateral to preserve and operate their businesses and effectuate a reorganization of their businesses, which will be used in accordance with the terms of this Final Order.  Without the use of the DIP Facilities and Cash Collateral, the Debtors will not have sufficient liquidity to be able to continue to operate their businesses.  The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain such consent or non-objection of certain parties, and to adequately protect the parties' interests in the Prepetition Collateral.  Absent authorization to immediately use the DIP Facilities and Cash Collateral, the Debtors' estates and their creditors would suffer immediate and irreparable harm.

J.      Other Financing Unavailable.  As discussed in the First Day Declaration and the Morgner Declaration and at the Interim Hearing, the Debtors are unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(l) of the Bankruptcy Code or (b) under section 364(c)(l) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of their estates under section 364(c)(2) of the Bankruptcy Code or (y) a junior lien on encumbered assets of their estates under section 364(c)(3) of the Bankruptcy

Code, or (iii) secured credit under section 364(d)(l) of the Bankruptcy Code from sources other than the DIP Term Lenders and the ABL Lenders on terms more favorable than the terms of the DIP Facilities. The only source of secured credit available to the Debtors, other than the use of Cash Collateral, is the DIP Facilities. The Debtors require both additional financing under the DIP Facilities and the continued use of Cash Collateral under the terms of this Final Order in order to satisfy their postpetition liquidity needs.

K.    Best Financing Presently Available. The DIP Term Lenders, the ABL Agent, and the ABL Lenders have indicated a willingness to provide the Debtors with financing solely on the terms and conditions set forth in the Interim Order, this Final Order, and the applicable DIP Loan Documents. After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing provided (and to be provided) by the DIP Term Lenders and the ABL Lenders pursuant to the terms of the Interim Order, this Final Order and the DIP Loan Documents, represents the best financing presently available. The DIP Term Lenders and ABL Lenders are good faith financiers. The DIP Term Lenders', the DIP Term Agent's, the ABL Lenders', and the ABL Agents' claims, superpriority claims, security interests, liens and other protections granted pursuant to the Interim Order, this Final Order and the applicable DIP Loan Documents will not be affected by any subsequent reversal, modification, vacatur or amendment of this Final Order, the Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

L.    Good Cause for Immediate Entry. Good cause has been shown for immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2. In particular, the authorization granted herein for the Debtors to enter into the DIP Facilities, to continue using Cash Collateral and to obtain financing, including on a priming lien

basis as set forth herein, is necessary to avoid immediate and irreparable harm to the Debtors and their estates. Entry of this Final Order is in the best interest of the Debtors, their estates and creditors. The terms of the DIP Facilities (including the Debtors' continued use of Cash Collateral, as qualified in "I" above) are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

M.    <u>Arm's Length Negotiation</u>. The Debtors, the DIP Term Agent, the DIP Term Lenders, the ABL Agent, the ABL Lenders, the Prepetition Term Agent, and the Prepetition Term Lenders have negotiated the terms and conditions of the DIP Facilities (including the Debtors' continued use of Cash Collateral), this Final Order and the Interim Order in good faith and at arm's length, and any credit extended and loans made to the Debtors pursuant to this Final Order and the Interim Order shall be, and hereby are, deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

N.    <u>Adequate Protection for the Prepetition Term Lenders, Prepetition Term Agent, ABL Lenders and ABL Agent</u>. The Prepetition Term Lenders, the Prepetition Term Agent, the ABL Lenders and the ABL Agent have negotiated and acted in good faith regarding the DIP Facilities and the Debtors' use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and continued operation of their businesses, in accordance with the terms hereof. The Prepetition Term Lenders, the Prepetition Term Agent, the ABL Lenders and the ABL Agent have agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral, in accordance with the terms hereof. The Prepetition Term Lenders, the Prepetition Term Agent, the ABL Lenders, and the ABL Agent are entitled to

the adequate protection provided in the Interim Order and this Final Order as and to the extent

set forth herein pursuant to §§ 361, 363 and 364 of the Bankruptcy Code.  Based on the Motion

and on the record presented to the Court at the Interim Hearing, the terms of the proposed

adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash

Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment

and constitute reasonably equivalent value and fair consideration for the consent thereto of the

Prepetition Term Lenders, the Prepetition Term Agent, the ABL Lenders and the ABL Agent;

provided, that nothing in this Final Order or the other DIP Loan Documents shall (x) be

construed as a consent by a n y  o f  the Prepetition Term Lenders, the Prepetition Term Agent,

the ABL Lenders or the ABL Agent that it would be adequately protected in the event debtor in

possession financing is provided by a third party (i.e., other than the DIP Term Lenders and

the ABL Lenders as contemplated herein) or a consent to the terms of any other such financing

or any lien encumbering the Prepetition Collateral (whether senior or junior) or to the use

of Cash Collateral except as expressly provided in this Final Order, including as set forth in

paragraph H above, or (y) prejudice, limit or otherwise impair the rights of the Prepetition Term

Agent (for its benefit or the benefit of the Prepetition Term Lenders) or the ABL Agent (for the

benefit of the ABL Lenders) to seek new, different or additional adequate protection in the event

circumstances change after the date hereof.

     O.    Sections 506(c) and 552(b).  In light of the Prepetition Term Agent and the

Prepetition Term Lenders' agreement to subordinate their liens and claims to the Carve-Out and

the DIP Liens and the use of Cash Collateral, as qualified in paragraph H above, and the DIP

Lenders permitting the use of the DIP Facility and Cash Collateral for payments made in

accordance with the terms of the Interim Order and this Final Order, (a) the Prepetition Term

Lenders, the Prepetition Term Agent, the ABL Lenders and the ABL Agent are entitled to a waiver of the provisions of Bankruptcy Code section 506(c), and (b) the Prepetition Term Lenders, the Prepetition Term Agent, the ABL Lenders and the ABL Agent are entitled to a waiver of any "equities of the case" claims under Bankruptcy Code section 552(b).

P.      Order of the Court.  Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED AND DECREED THAT:**

1.      Motion Granted.  The Motion is granted on a final basis, subject to the terms set forth herein.  Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits.  This Final Order shall be valid, binding on all parties in interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014.

2.      Authority to Enter Into DIP Facilities.  The Debtors are hereby authorized to incur and perform the obligations arising from and after the date of this Final Order under the DIP Facilities, on the terms set forth in this Final Order, including entry into, execution and delivery (to the extent not previously entered into, executed or delivered) of (a) the DIP Term Loan Agreement attached to the Interim Order and such additional documents, instruments and agreements as may be reasonably required by the DIP Term Agent and the DIP Term Lenders to implement the terms or effectuate the purposes of and transactions contemplated by this Final Order, the Interim Order and the DIP Term Loan Agreement (collectively, this Final Order, the Interim Order, the DIP Term Loan Agreement and such additional documents, instruments and

agreements, including any fee letters, the "DIP Term Loan Documents") and (b) the DIP ABL

Credit Agreement attached to the Interim Order and such additional documents, instruments and

agreements as may be reasonably required by the ABL Agent to implement the terms or

effectuate the purposes of and transactions contemplated by this Final Order, the Interim Order

and the DIP ABL Credit Agreement (collectively, this Final Order, the Interim Order, the DIP

ABL Credit Agreement and such additional documents, instruments and agreements, including

any fee letters, the "DIP ABL Credit Documents"; together with the DIP Term Loan Documents,

the "DIP Loan Documents"). The Debtors are hereby authorized to execute and deliver (to the

extent not previously executed or delivered) the DIP Loan Documents and borrow money and

obtain letters of credit, as applicable, under the DIP Term Facility and the DIP ABL Credit

Facility, and the Guarantors are hereby authorized to guaranty such borrowings and the

Borrower's obligations under the DIP Facilities and the DIP Loan Documents, all in accordance

with the terms of this Final Order and the other DIP Loan Documents.

3.  **Use of Cash Collateral and DIP Extensions of Credit**.  Subject to Paragraph H of

this Final Order, the Debtors are hereby authorized to continue to use Cash Collateral and the

proceeds of any borrowings under the DIP Facilities in accordance with the Budget (including

any Permitted Variances (as defined herein)) and the other terms and conditions set forth in this

Final Order and the DIP Loan Documents.

4.  **Validity of DIP Loan Documents**.  The DIP Loan Documents shall constitute

valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in

accordance with the terms thereof.  No obligation, payment, transfer or grant of security under

the DIP Loan Documents as approved under this Final Order and/or the Interim Order shall be

stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any

applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

5.    Carve Out.

(a)    Upon the DIP Term Agent's issuance of a Carve Out Trigger Notice (as defined below), all liens, claims and other security interests held by the DIP Term Lenders, including the DIP Term Lenders' DIP Superpriority Claims, the DIP Term Liens, the Term Adequate Protection Obligations, and the Prepetition Term Liens, shall be subject to the payment of the Carve Out.  Notwithstanding anything to the contrary contained in this paragraph or otherwise, none of the liens, claims and other security interests held by the ABL Agent or any ABL Lender in any Priority ABL Collateral (as defined below) shall be subject to the payment of the Carve Out (or any portion thereof), and under no circumstances shall proceeds of the ABL Priority Collateral and/or the ABL Agent's and ABL Lenders' superpriority claims be available for purposes of satisfying the Carve Out obligations as described in this paragraph.  For purposes of this Order, "Carve Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors or any Committee pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "Estate Professionals") at any time before or on the first business day following delivery by the DIP Term Agent of a Carve Out Trigger Notice, whether allowed by

21

the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional

Fees of Estate Professionals in an aggregate amount not to exceed $750,000 incurred after the

first business day following delivery by the DIP Term Agent of the Carve Out Trigger Notice, to

the extent allowed at any time, whether by interim order, procedural order, or otherwise (the

amounts set forth in this clause (iv) being the "Post Carve Out Trigger Notice Cap").    For

purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by

email (or other electronic means) by the DIP Term Agent to the Debtors, their lead restructuring

counsel, the ABL Agent and their lead restructuring counsel, and the U.S. Trustee, which notice

may be delivered following the occurrence and during the continuation of an Event of Default

(as defined in the DIP Term Agreement) and acceleration of the DIP Term Obligations under the

DIP Term Facility, stating that the Post Carve-Out Trigger Notice Cap has been invoked.

Notwithstanding the foregoing, so long as a Carve Out Trigger Notice has not been issued, the

Debtors shall be permitted to pay fees to estate professionals and reimburse expenses incurred by

estate professionals to the extent set forth in the Budget and that are allowed by the Court and

payable under sections 328, 330 and 331 of the Bankruptcy Code and compensation procedures

approved by the Court and in form and substance reasonably acceptable to the Debtors and the

Prepetition Term Lenders and the ABL Lenders, as the same may be due and payable, and the

same shall not reduce the Post Carve Out Trigger Notice Cap.

    (b)    On the day on which a Carve Out Trigger Notice is given by the DIP Term Agent

to the Debtors, with a copy to its lead restructuring counsel, the U.S. Trustee, and the ABL Agent

and its lead restructuring counsel, (the "Termination Declaration Date"), (i) if amounts available

in the Segregated Operating Account are insufficient to pay the Allowed Professional Fees then

due and payable and then only to the extent of such unpaid amounts in respect of the Allowed

Professional Fees, the Debtors may deliver a Notice of Withdrawal (as defined in the DIP Term Loan Agreement) to the DIP Term Agent (upon which Notice of Withdrawal the DIP Term Agent shall be entitled to rely upon, and shall be fully protected in relying upon), specifying the then unpaid amounts of the Allowed Professional Fees to be Withdrawn, and on the first business day after receipt of such Notice of Withdrawal, the DIP Term Agent shall disburse funds from the DIP Term Loan Funding Account in an amount equal to the amount specified in such Notice of Withdrawal and (ii) the Carve Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in the Segregated Operating Account in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.  On the Termination Declaration Date, if amounts available in the Segregated Operating Account are insufficient to fund the amount of the Post Carve Out Trigger Notice Cap and then only to the extent of such shortfall, the Debtors may deliver a Notice of Withdrawal to the DIP Term Agent (upon which Notice of Withdrawal the DIP Term Agent shall be entitled to rely upon, and shall be fully protected in relying upon), specifying the amount of the Post Carve Out Trigger Notice Cap to be Withdrawn, and on the first business day after receipt of such Notice of Withdrawal, the DIP Term Agent shall disburse funds from the DIP Term Loan Funding Account in an amount equal to the amount specified in such Notice of Withdrawal.  The Debtors shall deposit and hold such amounts in the Segregated Operating Account in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other

claims. The DIP Term Agent shall fund the Carve Out Reserves from the DIP Term Loan Funding Account in accordance with this paragraph 5(b), notwithstanding anything in this Final Order, the Interim Order or the DIP Term Loan Agreement to the contrary, including with respect to the existence of a Default or Event of Default, the failure of the Debtors to satisfy any or all of the conditions precedent for Withdrawals under the DIP Term Loan Agreement, any termination of the DIP Term Loan Agreement following an Event of Default, or the occurrence of the Maturity Date. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used by the Debtors first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), and then to pay the Post-Carve Out Trigger Notice Cap, until each is paid in full. All funds in the Post-Carve Out Trigger Notice Reserve shall be used by the Borrowers first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"). Notwithstanding anything to the contrary in this Agreement or the Bankruptcy Court Orders, following delivery of a Carve Out Trigger Notice, the DIP Term Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded in accordance with this paragraph 5(b). The Loan Parties hereby grant, and the DIP Term Agent, on its behalf and on behalf of the DIP Term Lenders, shall have, a first priority security interest in any residual interest in the Carve Out Reserves held in the Segregated Operating Account. Further, notwithstanding anything to the contrary in this Final Order or the Interim Order, except in respect of the ABL Agent and the ABL Lenders, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute DIP Term Loans or increase or reduce the Term Commitment (as defined in the DIP Term Loan Agreement), (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional

Fees shall not affect the priority of the Carve Out, (iii) in no way shall the Budget, Carve Out,

Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as

a cap or limitation on the amount of the Allowed Professional Fees due and payable by the

Debtors, and (iv) the DIP Term Agent shall have no obligation to fund any amount in excess of

the amounts then held in the DIP Term Loan Funding Account.  For the avoidance of doubt and

notwithstanding anything to the contrary herein or in any other order of the Bankruptcy Court, or

in the Prepetition Term Loan Documents, or in the DIP Loan Documents, except for the ABL

Priority Collateral, the Carve Out shall be senior to all liens and claims securing the DIP Term

Facility and the Term Adequate Protection Obligations, and any and all other forms of adequate

protection, liens, or claims securing the DIP Term Loan or the Prepetition Term Loan

Obligations under the Prepetition Term Loan Financing Documents.

(c)     Any payment or reimbursement made prior to the occurrence of the Carve Out

Trigger Notice in respect of any Allowed Professional Fees shall not reduce the Carve Out.

6.     <u>DIP Extensions of Credit</u>.  All loans made to or for the benefit of any of the

Debtors on or after the Petition Date in accordance with the DIP Term Loan Documents

(collectively, the "<u>DIP Term Extensions of Credit</u>"), all interest thereon and all fees, costs,

expenses, indemnification obligations and other liabilities, owing by the Debtors to the DIP

Term Lenders or the DIP Term Agent in accordance with and relating to this Final Order, the

Interim Order and the other DIP Term Loan Documents, including all "Obligations" as defined

in the DIP Term Loan Agreement, shall hereinafter be referred to as the "<u>DIP Term</u>

<u>Obligations</u>."  All loans and letters of credit made to or for the benefit of any of the Debtors on

or after the Petition Date in accordance with the DIP ABL Credit Documents (collectively, the

"<u>DIP ABL Extensions of Credit</u>"; together with the "DIP Term Extensions of Credit, the "<u>DIP</u>

Extensions of Credit"), all interest thereon and all fees, costs, expenses, indemnification

obligations and other liabilities, owing by the Debtors to the ABL Lenders or the ABL Agent in

accordance with and relating to this Final Order, the Interim Order and the other DIP ABL Credit

Documents shall hereinafter be referred to as the "DIP ABL Obligations", and together with the

DIP Term Obligations, the "DIP Obligations".  The DIP Extensions of Credit:  (a) shall be

evidenced by the books and records of the DIP Term Agent, the DIP Term Lenders, the ABL

Agent or the ABL Lenders, as applicable; (b) shall bear interest payable and incur fees at the

rates set forth in the applicable provisions of the DIP Term Loan Agreement and DIP ABL

Credit Agreement; (c) shall be secured in the manner specified below; (d) shall be payable in

accordance with the DIP Loan Documents; and (e) shall otherwise be governed by the terms set

forth in this Final Order and the other DIP Loan Documents.

7.      Application of Collections in respect of ABL Priority Collateral.  All collections

and payments made in respect of the ABL Priority Collateral, subject to the terms of the

Intercreditor Agreement, this Final Order and the Interim Order, shall be deemed applied first as

and when received by the ABL Agent and/or ABL Lenders to the repayment in full of the

Prepetition ABL Obligations under the Prepetition ABL Facility, second to the payment in full of

the DIP ABL Obligations under the DIP ABL Credit Facility, third to the payment of the DIP

Term Obligations under the DIP Term Facility, and fourth to the payment of the Prepetition

Term Obligations under the Prepetition Term Facility; provided that in the event of a successful

Challenge to the Prepetition Obligations pursuant to paragraph 32 below, the Prepetition

Obligations repaid shall be subject to disgorgement.

8.      DIP  Term  Loan  Funding  Account;  Segregated  Operating  Account.

Notwithstanding anything to the contrary contained herein or any DIP Loan document, every

provision set forth in this paragraph 8 is subject in all respect to the Carve Out and the Carve Out Reserves. The proceeds of the DIP Term Loans drawn under the DIP Term Facility shall be funded into a trust account established by and in the name of the DIP Term Agent for the purpose of holding such proceeds (the "DIP Term Loan Funding Account"). The Borrowers may request a disbursement of funds from the DIP Term Loan Funding Account, and the DIP Term Agent may honor such request, subject to the terms described herein and in the DIP Term Loan Documents, including without limitation that each such disbursement shall be in accordance with the Budget; provided, however, with respect to any disbursement of funds from the DIP Term Loan Funding Account, the DIP Term Agent shall be entitled to all protections set forth in the DIP Term Loan Documents, including, without limitation, that the DIP Term Agent may rely upon, and shall be fully protected in relying upon, any notice, certificate, or request from the Borrowers delivered in connection with such disbursement. The DIP Term Loan Funding Account and the funds held therein shall not constitute property of the estate. The DIP Term Agent shall have the right to deduct from and pay interest, fees and expenses of the DIP Term Obligations from the proceeds in the DIP Term Loan Funding Account (including the fees and expenses of the DIP Term Agent). Disbursements from the DIP Term Loan Funding Account shall be deposited by the Debtors in a segregated deposit account established by the Debtors for the purpose of receipt of the proceeds of the DIP Term Facility (the "Segregated Operating Account"). Upon the "Maturity Date" (as defined in the DIP Term Loan Agreement) all proceeds remaining in the DIP Term Loan Funding Account shall be applied by the DIP Term Agent to repay the DIP Term Obligations in accordance with the DIP Term Loan Agreement. Notwithstanding anything to the contrary herein or in the Prepetition Loan Documents (including, without limitation, the Intercreditor Agreement), (i) the ABL Agent and ABL

Lenders shall not have any right to sweep any of the funds in the Segregated Operating Account and shall not have any liens on, security interests in, claims to or rights with respect to the Segregated Operating Account or the funds maintained therein, and (ii) the DIP Term Facility or any of the funds maintained in the DIP Term Loan Funding Account or the Segregated Operating Account shall not be used to repay any of the DIP ABL Obligations, the Prepetition ABL Obligations or Prepetition Term Obligations.

9.    Rights and Benefits Under Intercreditor Agreement.  Except to the extent (if any) that such terms and conditions are inconsistent with the express terms of this Final Order, the terms and conditions of the Intercreditor Agreement (including with respect to the relative rights of the Prepetition Term Lenders and the ABL Lenders) shall not be mitigated or modified as a result of entry of this Final Order, entry into the DIP Loan Documents, or the incurrence of the DIP Obligations.  All Prepetition Term Lenders and the ABL Lenders have consented, or are deemed to have consented, to the terms of the DIP Facilities under the Intercreditor Agreement and the modifications to the Intercreditor Agreement as set forth in this Final Order.

10.    Other Use of DIP Extensions of Credit and Cash Collateral.  Subject to the terms and conditions set forth in this Final Order and the other DIP Loan Documents, the Debtors may use the DIP Extensions of Credit and the Cash Collateral, in accordance with the Budget.

11.    Budget.

(a)    The budget annexed to the Interim Order (and as it may be updated periodically in accordance with the DIP Loan Documents, but only with the consent of (i) each of the ABL Lenders and (ii) the "Required Lenders" as defined in the DIP Term Loan Agreement, the "Budget") hereby is approved.  Proceeds of the DIP Extensions of Credit and Cash Collateral under this Final Order shall be used by the Debtors only in accordance with the

Budget and this Final Order, subject to any Permitted Variance. Subject to the Carve-Out (but only in the case of the DIP Term Lenders), the DIP Term Lenders' and the ABL Lenders' consent to the Budget shall not be construed as consent to the use of DIP Extensions of Credit or Cash Collateral (i) beyond the "Maturity Date" (as defined in the DIP Term Loan Documents) with respect to the DIP Term Extensions of Credit and (ii) beyond the "Termination Date" (as defined in the DIP ABL Documents) with respect to the DIP ABL Extensions of Credit, regardless of whether the aggregate funds shown on the Budget have been expended. The Debtors shall provide a copy of any revised or updated budget to the U.S. Trustee and counsel to the Committee, if any.

12.     Permitted Variance. So long as the Maturity Date has not occurred, the Debtors shall be authorized to use proceeds of the DIP Extensions of Credit and Cash Collateral in accordance with the Budget subject to variances permitted under the DIP Loan Documents (each a "Permitted Variance").

13.     Continuation of Prepetition Liens. Until the Debtors have indefeasibly paid in full all Prepetition Term Obligations or such Prepetition Term Obligations receive the treatment set forth in the Prepackaged Plan on a final and nonappealable basis, all liens and security interests of the Prepetition Term Agent and the Prepetition Term Lenders (including, without limitation, liens granted for adequate protection purposes) shall remain valid and enforceable with the same continuing priority as described herein. Until the Debtors have indefeasibly paid in full all Prepetition ABL Obligations, all liens and security interests of the ABL Agent and the ABL Lenders securing the Prepetition ABL Obligations (including, without limitation, liens granted for adequate protection purposes) shall remain valid and enforceable with the same continuing priority as described herein.

14.  DIP Liens and Collateral.

(a)  Subject to Paragraph 14(c), and as more fully set forth in the DIP Term Loan Financing Documents, as security for the full and timely payment of the DIP Term Obligations, the DIP Term Agent on its behalf and on behalf of the DIP Term Lenders is hereby granted:

i.  pursuant to Bankruptcy Code Section 364(c)(2), a first priority lien on and security interest in all unencumbered assets of (i) the Debtors other than Excluded Assets (as defined in the DIP Term Loan Agreement) (now or hereafter acquired and all proceeds thereof) and (ii) the Canadian Subsidiaries (as defined in the DIP Term Loan Agreement) of a Debtor other than Excluded Subsidiary Assets (as defined in the DIP Term Loan Agreement) (now or hereafter acquired and all proceeds thereof); provided further that such liens shall rank equally in priority and share on a 50%/50% basis with the DIP ABL Liens on any unencumbered assets of the Debtors granted pursuant to this Final Order or the Interim Order (but excluding, for the avoidance of doubt, the Segregated Operating Account);

ii.  pursuant to Bankruptcy Code Section 364(c)(2), a first priority lien on the Segregated Operating Account, the funds maintained in such account, and all proceeds thereof;

iii.  pursuant to Bankruptcy Code Section 364(c)(3), a junior lien on and security interest in all assets of the Debtors encumbered by a first priority lien under the Prepetition ABL Facility  (now or hereafter acquired and all proceeds thereof) (the "Priority ABL Collateral"); provided further that such lien on the Priority ABL Collateral shall be junior in priority and subordinate to the DIP ABL Liens (defined below) and the Prepetition ABL Liens on the Priority ABL Collateral,

and senior in priority to any other lien on the Priority ABL Collateral (including, without limitation, the Prepetition Terms Liens) securing any other indebtedness of the Debtors; and

iv. pursuant to Bankruptcy Code Section 364(d), a first priority priming lien on and security interest in all assets of the Debtors encumbered by a first priority lien under the Prepetition Term Facility not otherwise described in clauses (a) through (c) above (the "Priority Term Collateral") (now or hereafter acquired and all proceeds thereof); provided further that such lien on the Priority Term Collateral shall be senior in priority to the Prepetition Term Liens, the DIP ABL Liens and the Prepetition ABL Liens on the Priority Term Collateral;

provided further that the DIP Term Liens (as defined below) shall attach to and encumber claims and causes of action under Chapter 5 of the Bankruptcy Code and similar laws, and any proceeds thereof and property received thereby whether by judgment, settlement or otherwise (collectively, the "Avoidance Actions"). The liens and security interests identified in this paragraph are referred to herein as the "DIP Term Liens" and the collateral to which such DIP Term Liens attach, the "DIP Term Collateral."

(b) Subject to Paragraph 14(c), and as more fully set forth in the DIP ABL Financing Documents, as security for the full and timely payment of the DIP ABL Obligations, the ABL Agent on behalf of the ABL Lenders is hereby granted:

i. pursuant to Bankruptcy Code Section 364(c)(2), a first priority lien on and security interest in all unencumbered assets of (i) the Debtors other than Excluded Assets (as defined in the DIP ABL Credit Agreement) (now or hereafter acquired and all proceeds thereof) (but excluding, for the avoidance of doubt, the

31

Segregated Operating Account) and (ii) the Canadian Subsidiaries (as defined in the DIP ABL Credit Agreement) of a Debtor other than Excluded Subsidiary Assets[3]; provided further that such liens shall rank equally in priority and share on a 50%/50% basis with the DIP Term Liens on any unencumbered assets of the Debtors granted pursuant to this Final Order or the Interim Order;

ii.      pursuant to Bankruptcy Code Section 364(d), a first priority lien on and security interest in the Priority ABL Collateral, which lien shall be senior in priority to the DIP Term Liens and the Prepetition Term Liens on the Priority ABL Collateral; and

iii.     pursuant to Bankruptcy Code Section 364(c)(3) and (d), a junior priming lien on the Priority Term Collateral, which lien shall be junior in priority and subordinate to the DIP Term Liens and Prepetition Term Liens on the Term Priority Collateral but senior in priority to the Prepetition ABL Liens on the Term Priority Collateral;

provided further that the DIP ABL Liens (as defined below) shall attach to and encumber Avoidance Actions and the proceeds thereof.  The liens and security interests identified in this paragraph are referred to herein as the "DIP ABL Liens" (together with the DIP Term Liens, the "DIP Liens") and the collateral to which such DIP Term Liens attach, the "DIP ABL Collateral" (together with the DIP Term Collateral, the "DIP Collateral").

(c)      The DIP Term Liens shall be subject and subordinate to the Carve Out (as defined in the DIP Term Loan Agreement and the DIP ABL Credit Agreement, as applicable).

---

[3] "Excluded Subsidiary Assets" as used in this paragraph 14(b)(i) means any assets of a Canadian Subsidiary of a Debtor to the extent that the creation of a security interest therein would have a material adverse tax implication.

Except as otherwise set forth herein and in the Intercreditor Agreement or by any court order heretofore or hereafter entered in the Chapter 11 Cases, the DIP Liens shall not, without the consent of the applicable DIP Agent, be made subject to, or *pari passu* with, any other lien or security interest, and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (such cases or proceedings, "Successor Cases"), and/or upon the dismissal of any of the Chapter 11 Cases; provided further that the DIP Liens described in Paragraphs 14(a) or 14(b) shall remain subject to any "Permitted Liens" as that term is defined in each of the Prepetition Term Loan Agreement and the Prepetition ABL Credit Agreement; provided, further, that, notwithstanding the reference to "Permitted Liens" in this Final Order or the Interim Order, nothing herein shall adversely affect the rights of any third party who asserts a lien senior or *pari passu* to the ABL Lenders, the ABL Agent, the DIP Term Agent, the DIP Term Lenders, the Prepetition Term Agent or the Prepetition Term Lenders. The DIP Liens and the Adequate Protection Liens shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code, the "equities of the case" exception of section 552 of the Bankruptcy Code, or section 506(c) of the Bankruptcy Code. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except as permitted by this Final Order, the Interim Order, the DIP Loan Documents, the Intercreditor Agreement or as otherwise authorized by the Court.

15.    Automatic Effectiveness of Liens. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby vacated and modified to permit the Debtors to continue to grant the liens and security interests to the Prepetition Term Agent, the Prepetition Term Lenders, the DIP Term Agent, the DIP Term Lenders, the ABL Agent and the ABL

33

Lenders previously granted by the Interim Order and the other DIP Loan Documents (and which continue to remain effective and perfected upon and after the date of entry of this Final Order).

16.    Automatic Perfection of DIP Liens.  The DIP Liens granted pursuant to the Interim Order shall continue to constitute valid, enforceable, nonavoidable and duly perfected first priority security interests and liens, and the DIP Term Agent, the DIP Term Lenders, the ABL Agent and the ABL Lenders shall not be required to file or serve financing statements, notices of lien, mortgage deeds, deeds of trust or similar instruments which otherwise may be required under federal, state or local law in any jurisdiction, or take any action, including taking possession or control, to validate and perfect such security interests and liens; and the failure by the Debtors to execute any documentation relating to the DIP Liens or deliver possessory DIP Collateral shall in no way affect the validity, enforceability, perfection or priority of such liens. The DIP Term Agent, the DIP Term Lenders, the ABL Agent and the ABL Lenders are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, deeds of trust, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Term Agent, the DIP Term Lenders, the ABL Agent or the ABL Lenders shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, deeds of trust, notices of lien or similar instruments or otherwise take any action to validate, perfect, or confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, nonavoidable and not subject to challenge, dispute or subordination, at the time and as of the date of entry of the Interim Order and continuing after the entry of this Final Order.  Upon the request of the DIP Term Agent or the ABL Agent, as

34

applicable, the Debtors, without any further consent of any party, are authorized to take, execute and deliver such instruments (in each case without representation or warranty of any kind except as set forth in the DIP Loan Documents) to enable the DIP Term Agent, DIP Term Lenders, the ABL Agent or the ABL Lenders, as the case may be, to further validate, perfect, preserve and enforce the DIP Liens consistent with the terms of this Final Order.  A certified copy of the Interim Order and/or this Final Order may be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, deeds of trust, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of the Interim Order and/or this Final Order for filing and recording; provided that nothing herein shall be construed as granting any exemption from transfer taxes within the meaning of Bankruptcy Code section 1146(a).

17.     <u>Other Automatic Perfection Matters</u>.  To the extent that the Prepetition Term Agent or the ABL Agent is the secured party under any account control agreements, listed as loss payee or additional insured under any of the Debtors' insurance policies or is the secured party under any Prepetition Financing Document, the applicable DIP Agent, on its behalf and on behalf of the applicable DIP Lenders, is also deemed to be the secured party under such account control agreements, loss payee or additional insured under the Debtors' insurance policies and the secured party under each such Prepetition Financing Document, and shall have all rights and powers in each case attendant to that position (including, without limitation, rights of enforcement), and shall act in that capacity and distribute any proceeds recovered or received in accordance with the terms of the Interim Order and/or this Final Order, as applicable, and the other DIP Loan Documents.  The Prepetition Term Agent or the ABL Agent, as applicable, shall serve as agent for the DIP Term Agent or the ABL Agent, as applicable, for purposes of

35

perfecting the DIP Term Agent's or ABL Agent's security interests in and liens on all DIP

Collateral that is of a type such that perfection of a security interest therein may be accomplished

only by possession or control by a secured party; provided that nothing herein shall be deemed to

grant the ABL Agent or the ABL Lenders any liens on, security interests in, or rights with

respect to the Segregated Operating Account and the funds contained therein.

18.     Automatic Perfection of Adequate Protection Liens.  The Adequate Protection

Liens granted pursuant to the Interim Order shall upon the date of entry of this Final Order

continue to constitute valid, enforceable, nonavoidable and duly perfected security interests and

liens, and the Prepetition Term Agent, the Prepetition Term Lenders, the ABL Agent and ABL

Lenders (collectively, the "Adequate Protection Parties") shall not be required to file or serve

financing statements, mortgage deeds, deeds of trust, notices of lien or similar instruments which

otherwise may be required under federal, state or local law in any jurisdiction, or take any action,

including taking possession or control, to validate and perfect such security interests and liens;

and the failure by the Debtors to execute any documentation relating to the Adequate Protection

Liens or deliver possessory collateral shall in no way affect the validity, enforceability,

perfection or priority of such liens.  The Adequate Protection Parties are hereby authorized, but

not required, to file or record financing statements, trademark filings, copyright filings,

mortgages, deeds of trust, notices of lien or similar instruments in any jurisdiction or take any

other action in order to validate and perfect the liens and security interests granted to them

hereunder.  Whether or not the Adequate Protection Parties shall, in their sole discretion, choose

to file such financing statements, trademark filings, copyright filings, mortgages, deeds of trust,

notices of lien or similar instruments or otherwise take any action to validate, perfect or confirm

perfection of the liens and security interests granted to them hereunder, such liens and security

interests shall be deemed valid, perfected, allowed, enforceable, nonavoidable and not subject to challenge, dispute or subordination, at the time and as of the date of entry of the Interim Order and continuing after entry of this Final Order. Upon the request of the Prepetition Term Lenders or the ABL Lenders, the Debtors, without any further consent of any party, are authorized to take, execute and deliver such instruments (in each case without representation or warranty of any kind except as set forth in the DIP Loan Documents) to enable the applicable Adequate Protection Party to further validate, perfect, preserve and enforce the Adequate Protection Liens. A certified copy of the Interim Order and/or this Final Order may be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, deeds of trust, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of the Interim Order and/or Final Order for filing and recording; provided that nothing herein shall be construed as granting any exemption from transfer taxes within the meaning of Bankruptcy Code section 1146(a).

19.    DIP Superpriority Claims. In addition to the liens and security interests granted to the DIP Term Agent on its behalf and on behalf of the DIP Term Lenders and the ABL Agent on behalf of the ABL Lenders pursuant to the Interim Order (which continue to remain effective and perfected upon and after the date of entry of this Final Order), subject and subordinate to the Carve-Out (but only in the case of the DIP Term Agent and DIP Term Lenders) and in accordance with sections 364(c)(1), 503 and 507 of the Bankruptcy Code, all of the DIP Term Obligations and the DIP ABL Obligations (including, without limitation, all DIP Extensions of Credit) shall as of the date of this Final Order continue to constitute allowed superpriority administrative expense claims (the "DIP Superpriority Claims") with priority over any and all administrative expenses of the Debtors, whether heretofore or hereafter incurred, of the kind

specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 364, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, 1114 or any other provisions of the Bankruptcy Code; provided, that (i) the DIP Superpriority Claims in respect of the DIP Term Facility and the DIP Superpriority Claims in respect of the DIP ABL Credit Facility shall rank equally in priority and share on a 50%/50% basis with respect to all amounts payable in respect of such superpriority administrative expense claims and (ii) the DIP Superpriority Claims shall attach to the Avoidance Actions.

       20.    <u>Adequate Protection</u>.

       (a)    The Prepetition Term Agent for the benefit of itself and the Prepetition Term Lenders (collectively, the "<u>Term Adequate Protection Parties</u>"), shall be granted the following protection, pursuant to Sections 361, 507, 363(e) and 364(d)(1) of the Bankruptcy Code or otherwise, of its Prepetition Term Liens for the consent of the Prepetition Term Agent and the Prepetition Term Lenders to the priming effectuated by the DIP Facilities, consent to the use of its collateral (including Cash Collateral), consent to the transaction contemplated by the DIP Facilities, and for the diminution in the value of the pre-petition security interests of such party, whether or not such diminution in value results from the sale, lease or use by the Debtors of the collateral securing the Prepetition Term Obligations (including, without limitation, Cash Collateral), the priming of the Prepetition Term Liens or the stay of enforcement of any pre-petition security interest arising from section 362 of the Bankruptcy Code, or otherwise (each, a "<u>Term Diminution Claim</u>").  As security for and solely to the extent of any Diminution Claim, the Term Adequate Protection Parties are granted the following adequate protection (collectively, the "<u>Term Adequate Protection Obligations</u>"):

i.  <u>Term Adequate Protection Lien</u>. The Prepetition Term Agent, on behalf of itself and the Prepetition Term Lenders shall be granted for their benefit, effective and perfected as of the date of entry of the Interim Order and continuing upon and after the entry of this Final Order, and without the necessity of the execution or filing of mortgages, security agreements, pledge agreements, financing statements or other agreements, a security interest in and lien on all assets of the Debtors (together, the "<u>Term Adequate Protection Liens</u>"), subject and subordinate only to (w) the Carve-Out, (x) the DIP Term Liens securing the DIP Term Facility, (y) with respect to the Priority ABL Collateral, the DIP ABL Liens securing the DIP ABL Credit Facility and Prepetition ABL Liens securing the Prepetition ABL Facility and (z) "Permitted Liens" (as defined in the Prepetition Term Loan Agreement); <u>provided</u>, further that the Term Adequate Protection Liens shall encumber the Avoidance Actions; <u>provided</u>, further, that, notwithstanding the reference to "Permitted Liens" in this Final Order or the Interim Order, nothing herein shall adversely affect the rights of any third party who asserts a lien senior or *pari passu* to the ABL Lenders, the ABL Agent, the DIP Term Agent, the DIP Term Lenders, the Prepetition Term Agent or the Prepetition Term Lenders.

ii. <u>Term Adequate Protection Super-Priority Claim</u>. The Prepetition Term Agent, on behalf of itself and the Prepetition Term Lenders, shall be granted, subject to the payment of the Carve-Out, a superpriority administrative expense claim junior only to the claims granted to the DIP Term Agent and the ABL Agent by this Final Order; <u>provided</u> that the Prepetition Term Agent and the Prepetition Term Lenders shall not receive or retain any payments, property or other amounts in respect of such

superpriority claims unless and until the obligations under the DIP Term Facility and the DIP ABL Credit Facility have indefeasibly been paid in cash in full.

iii. Fees and Expenses.    Without further application to the Court, the Debtors are authorized and directed to pay, on an ongoing basis, from time to time after the Petition Date, and without duplication, pursuant to the procedures set forth in this paragraph 20(a)(iii), all reasonable and documented prepetition and postpetition fees and expenses incurred by the Prepetition Term Agent (for its benefit and the benefit of the Prepetition Term Lenders thereunder) and the ABL Agent (for its benefit and the benefit of the ABL Lenders) during and in connection with the Chapter 11 Cases and required to be paid by the Debtors under the Prepetition Term Loan Financing Documents and the Prepetition ABL Financing Documents, as applicable, including, but not limited to, agency fees, the reasonable professional fees and disbursements of (i) White & Case LLP (as counsel to Deutsche Bank AG New York Branch, the existing Prepetition Term Agent) and Ropes & Gray LLP (as counsel to Wilmington Trust, National Association, as the anticipated successor Prepetition Term Agent), in connection with the Prepetition Term Agent in its role as agent and its administration of the Prepetition Term Loan Financing Documents, (ii) Milbank, Tweed, Hadley & McCloy LLP, as counsel to the Prepetition Term Lender Ad Hoc Committee, of all professional fees and expenses, (iii) each local counsel for the Prepetition Term Agent, the ABL Agent and Prepetition Term Lender Ad Hoc Committee, (iv) Houlihan Lokey, in connection with its role as financial advisor to the Prepetition Term Lender Ad Hoc Committee, (v) Otterbourg, P.C. as counsel to the ABL Lenders and (vi) RAS Management, the ABL Agent's financial advisor (such professional

fees, collectively, the "Term Loan and ABL Facility Professional Fees and Expenses"). The Debtors shall pay the Term Loan and ABL Facility Professional Fees and Expenses within ten business days (if no written objection is received with such ten business days' period) after such professional has delivered an invoice to the Debtors describing such fees and expenses in summary form, with a copy of such invoices delivered simultaneously to the DIP Lenders, the U.S. Trustee, and counsel to a Committee, if any; provided however, that any such invoice may be redacted as necessary to protect privileged, confidential, or proprietary information. Parties in interest may deliver written objections to payment of Term Loan and ABL Facility Professional Fees and Expenses within ten business days following receipt of an invoice for such fees and expenses. None of the Term Loan and ABL Facility Professional Fees and Expenses shall be subject to Court approval or required to be maintained in accordance with the U.S. Trustee Guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, however, if an objection to a professional's invoice is timely received, the Debtors shall only be required to pay the undisputed amount of the invoice and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.

iv. Financial Reporting. The Debtors shall continue to provide the Prepetition Term Agent, the ABL Agent, Houlihan Lokey and RAS Management with financial and other reporting in compliance with the Prepetition Term Loan Financing Documents and the Prepetition, including with respect to any cure period provided for therein, and any reports provided to the ABL Agent or the ABL Lenders.

v.  Interest.  All obligations, including accrued but unpaid interest, under the Prepetition Term Facility owing by the Debtors thereunder and other fees owing by the Debtors thereunder shall continue to accrue interest (including interest on interest) at the default rate applicable on the Petition Date under the Prepetition Term Facility, but shall not be payable in cash.

(b)     The ABL   Agent for the benefit of itself and the ABL Lenders (collectively, the "ABL Adequate Protection Parties"), shall be granted the following protection, pursuant to Sections 361, 507, 363(e) and 364(d)(1) of the Bankruptcy Code or otherwise, of its Prepetition ABL Liens for the consent of such ABL Lenders to the priming effectuated by the DIP Facilities, consent to the use of its collateral (including Cash Collateral), consent to the transaction contemplated by the DIP Facilities, and for the diminution in the value of the pre-petition security interests of such party, whether or not such diminution in value results from the sale, lease or use by the Debtors of the collateral securing the Prepetition ABL Obligations (including, without limitation, Cash Collateral), the priming of the Prepetition ABL Liens or the stay of enforcement of any pre-petition security interest arising from section 362 of the Bankruptcy Code, or otherwise (each, an "ABL Diminution Claim").  As security for and solely to the extent of any ABL Diminution Claim, the ABL Adequate Protection Parties are granted the following adequate protection (collectively, the "ABL Adequate Protection Obligations"):

i.  Pursuant to Sections 361 and 363 of the Bankruptcy Code, valid and binding, enforceable and perfected replacement liens upon and security interests in the Prepetition ABL Collateral (the "ABL Adequate Protection Liens"; together with the Term Adequate Protection Liens, the "Adequate Protection Liens"); provided, that any portion of such liens and security interests in the Priority Term Collateral shall be

42

junior in priority and subordinate in all respects to the DIP Term Liens, the

Prepetition Term Liens, the Term Adequate Protection Liens on the Term Priority

Collateral, and any "Permitted Liens"; provided, further that the ABL Adequate

Protection Liens shall encumber the Avoidance Actions; provided, further, that,

notwithstanding the reference to "Permitted Liens" in this Final Order or the Interim

Order, nothing herein shall adversely affect the rights of any third party who asserts a

lien senior or *pari passu* to the ABL Lenders, the ABL Agent, the DIP Term Agent,

the DIP Term Lenders, the Prepetition Term Agent or the Prepetition Term Lenders;

and

ii.   as and to the extent provided by Section 507(b) of the Bankruptcy Code an allowed

Superpriority administrative expense claim in each of the Chapter 11 cases and any

Successor Cases (the "ABL Adequate Protection Superpriority Claim"); provided,

further, the ABL Adequate Protection Superpriority Claim shall have priority overall

all administrative claims and unsecured claims against the Debtors and their estates

now existing or hereafter arising of any kind or nature whatsoever subject only to the

DIP Term Superpriority Claim, which shall rank equally in priority and share on a

50%/50% basis with respect to all amounts payable in respect of such super priority

administrative expense claims;

The ABL Replacement Lien shall be senior to all other security interests in, liens on, or claims

against the Prepetition ABL Collateral.

21.    Investigation Budget.  The Debtors shall not assert or prosecute, and no portion of

the DIP Facilities, the DIP Collateral (including the Prepetition Collateral and the Cash

Collateral), or the Carve Out, and no disbursements set forth in the Budget, shall be used for the

payment of professional fees, disbursements, costs or expenses incurred by any party in interest in connection with (a) asserting or prosecuting any claims or causes of action arising under or related to the DIP Loan Documents, the Prepetition Term Loan Financing Documents or the Prepetition ABL Financing Documents, or the liens or security interests securing the obligations under any of the foregoing or to pursue a Challenge (as defined in paragraph 32) against the Prepetition Term Lenders, the Prepetition Term Agent, the ABL Lenders or the ABL Agent, or (b) asserting any Challenge or raising any defenses to the Prepetition Obligations, the DIP Obligations, or the liens of the Prepetition Term Agent, the Prepetition Term Lenders or the ABL Lenders; provided, however, that not more than $25,000 in the aggregate of proceeds of any Cash Collateral or any proceeds of the DIP Facilities or the DIP Collateral may be used to pay any allowed fees of the Committee or professionals retained by the Committee and incurred in connection with investigating the matters covered by the stipulations contained in paragraphs F and G of this Final Order (the "Investigation Budget").

22.     506(c) Waiver. The Debtors (on behalf of themselves and their estates) irrevocably waive, and are prohibited from asserting, any surcharge claim under section 506(c) of the Bankruptcy Code or otherwise for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Prepetition Term Agent, the Prepetition Term Lenders, the ABL Agent or the ABL Lenders upon, the DIP Collateral. In no event shall the DIP Term Agent, the ABL Agent, the DIP Term Lenders, the ABL Lenders, the Prepetition Term Agent, or the Prepetition Term Lenders be subject to the equitable doctrine of marshaling or any similar doctrine with respect to the DIP Collateral.

23.     Restrictions on Granting Postpetition Liens; Collateral Rights; Limitations in Respect of Subsequent Court Orders and Subordination of Liens. Except for the Carve-Out, the

Carve Out Reserves or as otherwise expressly set forth in the DIP Loan Documents or this Final Order, it shall constitute an Event of Default under the DIP Term Facility and the DIP ABL Credit Facility if any of the Debtors incurs or requests authority to incur a claim or grants a lien (or a claim or lien is allowed) having a priority superior to or *pari passu* with those granted pursuant to this Final Order and/or the Interim Order to the Prepetition Term Agent on its behalf and on behalf of the Prepetition Term Lenders or the ABL Agent on behalf of the ABL Lenders at any time during which any portion of the DIP Facilities, the DIP Obligations, the Prepetition ABL Credit Facility, the Prepetition Term Loan Facility, the Prepetition Term Loan Obligations or the Adequate Protection Obligations remains outstanding.

24.    <u>Binding Nature of Order</u>.  The provisions of this Final Order shall be binding upon the Debtors and their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter elected or appointed for or on behalf of any Debtor's estate or with respect to its property).

25.    <u>Survival of Order</u>.  Solely with respect to the DIP Term Agent, the DIP Term Lenders, the ABL Agent, the ABL Lenders, the Prepetition Term Agent, and the Prepetition Term Lenders, the provisions of this Final Order and any actions taken pursuant thereto (a) shall survive the entry of any order:  (i) confirming any plan of reorganization in any of the Chapter 11 Cases; (ii) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; or (iii) dismissing any of the Chapter 11 Cases; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Final Order and/or the Interim Order shall maintain their priority as provided by this Final Order until all of the DIP Obligations are indefeasibly paid in full and discharged in accordance with the DIP Loan Documents.  The DIP Obligations shall not be

discharged by the entry of any order confirming any plan of reorganization in any of the Chapter 11 Cases that does not provide for payment in full of the DIP Obligations or such other treatment of the DIP Obligations as may be agreed to by the DIP Term Agent, the DIP Term Lenders, the ABL Agent or the ABL Lenders, as applicable, in their sole discretion.

26. <u>Protection under Section 364(e) of the Bankruptcy Code</u>. If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any DIP Obligations or Adequate Protection Obligations owing to the DIP Term Agent, the DIP Term Lenders, the ABL Agent, the ABL Lenders, the Prepetition Term Agent, or the Prepetition Term Lenders, as applicable, incurred prior to the actual receipt by such entities of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP Loan Documents with respect to any DIP Obligations or Adequate Protection Obligations owing to the DIP Term Agent, the DIP Term Lenders, the ABL Agent, the ABL Lenders, the Prepetition Term Agent, or the Prepetition Term Lenders, as applicable. Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or the incurrence of DIP Obligations or Adequate Protection Obligations owing to the Adequate Protection Parties by the Debtors prior to the actual receipt by the Adequate Protection Parties of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Final Order, and the Adequate Protection Parties shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code, this Final Order and the other DIP Loan Documents with respect to all uses of Cash Collateral and the incurrence

of DIP Obligations and Adequate Protection Obligations owing to the Adequate Protection

Parties.

27.    Termination of DIP Facilities and Use of Cash Collateral.  The Debtors' right to

use the DIP Term Facility and Cash Collateral shall terminate immediately upon the earliest of

(i) delivery of written notice (the "Default Notice") via electronic mail and facsimile by either

the DIP Term Agent or the ABL Agent to counsel to the Debtors and their lead restructuring

counsel, counsel to the DIP Lenders, the U.S. Trustee, counsel to the Committee (if any), and

any other official committee appointed in the Chapter 11 Cases, of the occurrence of an Event of

Default (as defined below), plus the longer of five business days or any applicable cure period

set forth in the applicable DIP Loan Documents (such period of time, the "Default Notice

Period"), (ii) the Maturity Date (as defined in the DIP Term Loan Agreement), and (iii) the

Termination Date (as defined in the DIP ABL Credit Agreement) (the date of such termination

pursuant to clause (i), (ii) or (iii) above, the "Termination Date").

28.    Events of Default.  Except as otherwise provided in this Final Order or to the

extent the DIP Term Lenders may otherwise agree in writing, any violation of any of the terms of

this Final Order or any occurrence of an "Event of Default" under and as defined in Section 8.01

of the DIP Term Loan Agreement and Section 12.1 of the DIP ABL Credit Agreement shall

constitute an event of default (each, an "Event of Default").   Interest, including, where

applicable, default interest, shall accrue and be paid as set forth in the DIP Term Loan

Agreement.

29.    Remedies.  The automatic stay provisions of section 362 of the Bankruptcy Code

shall be automatically vacated and modified to the extent necessary to permit the DIP Term

Agent, the DIP Term Lenders, the ABL Agent, or the ABL Lenders, as applicable, to exercise,

upon not less than five business days' prior written notice by email (which notice may be set forth in a Default Notice) to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Committee, if any, following the occurrence and continuance of an Event of Default (as defined in the applicable DIP Loan Documents), all rights and remedies provided in this Final Order and the DIP Loan Documents, as applicable, subject to the terms and conditions of the Intercreditor Agreement.  The Debtors or any party in interest may seek a determination from this Court that no Event of Default has occurred and is continuing, and request appropriate relief from this Court.

30.    <u>Limitations on Borrowings</u>.  Except as expressly permitted herein, it shall constitute an Event of Default if any of the Debtors seeks authorization for the Debtors or their estates to borrow money from any person other than the DIP Term Lenders as contemplated herein to the extent that the repayment of such borrowings is to be secured pursuant to section 364(d)(1) of the Bankruptcy Code by a security interest, lien or mortgage that is senior to or *pari passu* with any of the security interests, liens or mortgages held by the DIP Term Agent on its behalf and on behalf of the DIP Term Lenders or the Prepetition Term Agent on its behalf and on behalf of the Prepetition Term Lenders, including the Term Adequate Protection Liens, the Prepetition Term Liens, and the DIP Term Liens, unless in connection with such borrowings the DIP Term Obligations and any Prepetition Term Obligations are indefeasibly paid in full in cash as a condition to the closing of such borrowings.

31.    <u>Modifications of DIP Loan Documents and Budgets</u>.  The Debtors are hereby authorized, without further order of this Court, to enter into agreements with the DIP Term Agent, the DIP Term Lenders, the ABL Agent, or the ABL Lenders, as applicable, providing for any non-material modifications to the Budget or the DIP Loan Documents, or of any other

modifications to the DIP Loan Documents necessary to conform the terms of the DIP Loan Documents to this Final Order; provided, however, that the Debtors shall not enter into any material modification or amendment to the Budget or the DIP Loan Documents that is adverse to the Debtors' estates absent further order of this Court.

32.    Stipulations Regarding Prepetition Term Obligations, the Prepetition Term Liens, the Prepetition ABL Obligations and the Prepetition ABL Liens Binding on Parties in Interest. The stipulations and admissions contained in this Final Order, including, without limitation, in recital paragraphs F and G of this Final Order, shall be binding on the Debtors' estates and all parties in interest, including, without limitation, any Committee, unless (a) any Committee, or another party in interest (other than any of the Debtors) with standing and requisite authority, has timely commenced a contested matter or adversary proceeding (a "Challenge") challenging the amount, validity or enforceability of the Prepetition Term Obligations, the Prepetition ABL Obligations, or the perfection or priority of the Prepetition Term Liens or the Prepetition ABL Liens, or otherwise asserting any objections, claims or causes of action on behalf of the Debtors' estates against the Prepetition Term Lenders or ABL Lenders relating to the Prepetition Term Obligations, the Prepetition ABL Obligations, the Prepetition Term Liens or the Prepetition ABL Liens no later than on or before either (i) if no Committee has been appointed, the earlier of (A) seventy-five (75) days from the date of entry of the Interim Order and (B) the date on which the Court commences a hearing to consider confirmation of the Debtors' Chapter 11 plan or plans of reorganization for one or more of the Debtors, or (ii) if a Committee has been appointed, the earlier of (A) sixty (60) days after such Committee is appointed and (B) the date on which the Court commences a hearing to consider confirmation of the Debtors' Chapter 11 plan or plans of reorganization for one or more of the Debtors, and (b) to the extent the Court rules in favor of the

plaintiff in any such timely and properly filed Challenge.  If no such Challenge is timely commenced as of such date then, without further order of the Court, to the extent not theretofore indefeasibly repaid, satisfied, or discharged, as applicable, (x) the claims, liens and security interests of the Prepetition Term Agent, the Prepetition Term Lenders, the ABL Agent and the ABL Lenders shall, without further order of the Court, be deemed to be finally allowed for all purposes in the Chapter 11 Cases and any subsequent Chapter 7 cases and shall not be subject to challenge or objection by any party in interest as to validity, priority, amount or otherwise, and (y) without further order of the Court, the Debtors and their estates shall be deemed to have released any and all claims or causes of action against the Consenting Term Lenders and the ABL Lenders with respect to the Prepetition Term Loan Financing Documents, the Prepetition ABL Financing Documents, or any related transactions.  Notwithstanding anything to the contrary herein, if no Challenge is timely commenced, the stipulations contained in paragraphs F and G of this Final Order shall be binding on the Debtors' estates, any Committee and all parties in interest.

33.    Waiver of Requirement to File Proofs of Claim.

(a)    The DIP Term Agent, the DIP Term Lenders, the ABL Agent and the ABL Lenders shall not be required to file proofs of claim in the Chapter 11 Cases or any Successor Case in order to maintain their respective claims for payment of the DIP Obligations under the applicable DIP Loan Documents.  The statements of claim in respect of the DIP Obligations set forth in the Interim Order and this Final Order, together with the evidence accompanying the Motion and presented at the Interim Hearing are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

(b)    The Prepetition Term Agent, the Prepetition Term Lenders, the ABL Agent and the ABL Lenders shall not be required to file proofs of claim in the Chapter 11 Cases or any Successor Case in order to maintain their respective claims for payment of the Prepetition Term Obligations and the Prepetition ABL Obligations, respectively, under the respective Financing Documents.  The statements of claim in respect of the Prepetition Term Obligations and the Prepetition ABL Obligations, respectively, set forth in the Interim Order and this Final Order, together with the evidence accompanying the Motion and presented at the Interim Hearing are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

34.    <u>DIP Term Agent, ABL Agent, Prepetition Term Agent Authorization</u>.  For the avoidance of doubt and notwithstanding any provision of the Prepetition Term Loan Financing Documents, the Prepetition ABL Financing Documents, or the DIP Loan Documents, each of the DIP Term Agent, the ABL Agent, and the Prepetition Term Agent is hereby authorized to make any and all account transfers requested by the Debtors in accordance with the Budget, and is further authorized to take any other action reasonably necessary to implement the terms of this Final Order.

35.    <u>Modification of Final Order</u>.  If the Debtors seek any amendment, modification or extension of this Final Order without the prior written consent of the DIP Term Lenders, the ABL Lenders, the Prepetition Term Lenders and the ABL Lenders (and with respect to amendments or modifications which affect the rights and duties of the DIP Term Agent, the ABL Agent, or the Prepetition Term Agent hereunder, the DIP Term Agent, the ABL Agent, or the Prepetition Term Agent, as applicable), no such consent shall be implied by any action, inaction

or acquiescence of the DIP Term Lenders, the ABL Lenders, or the Prepetition Term Lenders

(and, if applicable, the DIP Term Agent, the ABL Agent, or the Prepetition Term Agent).

36.     <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of

this Final Order is without prejudice to, and does not constitute a waiver of, expressly or

implicitly (a) the DIP Term Agent's, the DIP Term Lenders', the ABL Agent's, the ABL

Lenders', the Prepetition Term Agent's, and the Prepetition Term Lenders' right to seek any

other or supplemental relief in respect of the Debtors, including the right to seek additional

adequate protection, as applicable, subject to the terms of the Intercreditor Agreement, (b) any of

the rights of the DIP Term Agent, the DIP Term Lenders, the ABL Agent, the ABL Lenders, the

Prepetition Term Agent, or the Prepetition Term Lenders under the Bankruptcy Code or

applicable nonbankruptcy law (including, and subject to the terms of, the Intercreditor

Agreement).  Nothing contained herein shall be deemed a finding by the Court or an

acknowledgement by any of the Prepetition Term Agent, the Prepetition Term Lenders, the ABL

Agent or the ABL Lenders that the adequate protection granted herein does in fact adequately

protect the Prepetition Term Agent, the Prepetition Term Lenders, the ABL Agent or the ABL

Lenders against any diminution in value of the Prepetition Collateral.

37.     <u>Priority of Terms</u>.  To the extent of any conflict between or among the Motion,

the DIP Loan Documents, the Intercreditor Agreement, the Interim Order, and this Final Order,

the terms and provisions of this Final Order shall govern.

38.     <u>Entry of Final Order; Effect</u>.  This Final Order shall take effect and be fully

enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof, notwithstanding

the possible application of Fed. R. Bankr. P. 6004(h), 7062, 9014, or otherwise, and the Clerk of

this Court is hereby directed to enter this Final Order on this Court's docket in the Chapter 11 Cases.

39.    <u>Limitation of Liability</u>.  In determining to make any DIP Extensions of Credit, permitting the use of Cash Collateral, or in exercising any rights or remedies as and when permitted pursuant to this Final Order, the Interim Order, the DIP Loan Documents, the Prepetition Term Loan Financing Documents, or the Prepetition ABL Financing Documents, as applicable, none of the DIP Term Agent, the DIP Term Lenders, the ABL Agent, the ABL Lenders, the Prepetition Term Agent, or the Prepetition Term Lenders, or any successor of any of the foregoing, shall be deemed to be in control of the operations of the Debtors or any affiliate (as defined in section 101(2) of the Bankruptcy Code) of the Debtors, or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors or any affiliate of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).  Furthermore, nothing in this Final Order, the Interim Order, the DIP Loan Documents, the Prepetition Term Loan Financing Documents, or the Prepetition ABL Financing Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Term Agent, the DIP Term Lenders, the ABL Agent, the ABL Lenders, the Prepetition Term Agent, the Prepetition Term Lenders, the Prepetition ABL Agent, or the ABL Lenders, or any successor of any of the foregoing, of any liability for any claims arising from the prepetition or postpetition activities of the Debtors or any affiliate of the Debtors.

40.    <u>Credit Bidding</u>.

(a)      Subject to the terms of the Intercreditor Agreement, the DIP Term Agent, acting at the direction of the "Required Lenders" (as defined in the DIP Term Loan Agreement), shall have the unqualified right to credit bid up to the full amount of the DIP Term Obligations in any sale of the Priority Term Collateral (or any part thereof), without the need for further Court order authorizing the same, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise; and

(b)      Subject to the terms of the Intercreditor Agreement, the ABL Agent, acting at the direction of the ABL Lenders, shall have the unqualified right to credit bid up to the full amount of the DIP ABL Obligations in any sale of the Priority ABL Collateral (or any part thereof), without the need for further Court order authorizing the same, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

41.    <u>Equities of the Case</u>.  In light of, as applicable, the subordination of the Prepetition Term Liens and the Prepetition ABL Liens to the DIP Liens and the Carve-Out (in the case of the DIP Term Liens and the Term Adequate Protection Liens), and the granting of the DIP Liens, the Prepetition Term Agent, the Prepetition Term Lenders, the ABL Agent, the ABL Lenders shall be entitled to all benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Prepetition Term Agent, the Prepetition Term Lenders, the ABL Agent, the ABL Lenders with respect to the proceeds, product, offspring, or profits of any of the DIP Collateral, including the Prepetition Collateral.

42.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any party, creditor, equity holder or other entity other than the DIP Term Agent, the DIP Term Lenders, the ABL Agent, the ABL Lenders, the Prepetition Term Agent, the Prepetition Term Lenders, and the Debtors, and their respective successors and assigns.

43.    <u>Intercreditor Issues</u>.  Except as expressly set forth in Paragraph 40 or otherwise herein, nothing in this Final Order shall be construed to convey on any individual DIP Term Lender, ABL Lender, or Prepetition Term Lender any consent, voting or other rights beyond those (if any) set forth in the DIP Loan Documents, the Prepetition Term Loan Financing Documents, the Prepetition ABL Financing Documents, and the Intercreditor Agreement as applicable.

44.    <u>DIP Fees and Expenses</u>.  The Debtors are authorized and directed to pay all fees and expenses of the DIP Term Agent, the DIP Term Lenders, the ABL Agent and the ABL Lenders in connection with the DIP Facilities, as applicable, as provided in the applicable DIP Loan Documents, whether or not the transactions contemplated hereby are consummated, whether or not incurred prepetition or postpetition, including, without limitation, agency fees, the professional fees and expenses of Ropes & Gray LLP (as counsel to the DIP Term Agent), Milbank, Tweed, Hadley & McCloy LLP (as counsel to the DIP Term Lenders), Houlihan Lokey (as financial advisor to the DIP Term Lenders), Otterbourg, P.C. (as counsel to the ABL Lenders), RAS Management (as the ABL Agent's financial advisor), and each local counsel to the DIP Term Agent, DIP Term Lenders, and the ABL Agent, in each case promptly upon receipt of summary form invoices which may be redacted for privileged information; provided

that the payment of any such invoices shall be subject to the notice and objection procedures set forth in the Paragraph 20(a)(iii).

45.    Resignation of Prepetition Term Agent; Successor Prepetition Term Agent. Deutsche Bank AG New York Branch (i) is authorized to resign as Prepetition Term Agent in accordance with the terms of the Prepetition Term Loan Agreement, transfer collateral to any successor administrative agent under the Prepetition Term Loan Agreement (and serve as sub-collateral agent of and bailee for such successor administrative agent), and take or refrain from taking any other action to effectuate such resignation permitted under the Prepetition Term Loan Financing Documents, and (ii) is entitled to all of the rights, benefits and protections under the Prepetition Term Loan Financing Documents, all of which are reaffirmed and ratified pursuant to this Final Order. Wilmington Trust, National Association ("WT") (i) is authorized to accept the appointment as Prepetition Term Agent in accordance with the terms of the Prepetition Term Loan Agreement, accept transfers of collateral from the resigning administrative agent under the Prepetition Term Loan Agreement, and take or refrain from taking any other action to effectuate such appointment permitted under the Prepetition Term Loan Financing Documents, and (ii) upon such appointment, shall be entitled to all of the rights, benefits and protections under this Final Order, the Interim Order and under the Prepetition Term Loan Financing Documents, all of which are reaffirmed and ratified pursuant to this Final Order. The Debtors are authorized to (i) enter into such agreements and amendments to the Prepetition Term Loan Documents and take any other action as may be reasonably required by WT in connection with such resignation and appointment, (ii) pay all prepetition and postpetition fees and expenses as set forth in such agreements and amendments, (iii) and provide Deutsche Bank AG New York Branch and WT, solely in their respective capacity as Prepetition Term Agent, with any requested notice or

documents required under the Prepetition Term Loan Financing Documents.  Notwithstanding anything to the contrary herein or the Interim Order, this paragraph is effective on a final basis as of the entry of the Interim Order.

46.    <u>Enforceability</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.  Any findings of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

47.    <u>Retention of Jurisdiction</u>.  Notwithstanding any provision in the DIP Loan Documents, the Prepetition Term Loan Financing Documents or the Prepetition ABL Financing Documents, this Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Final Order, the DIP Facilities, or the DIP Loan Documents.

48.    <u>Disposition of Collateral</u>.  Subject to the terms of the Intercreditor Agreement, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral without the prior written consent of the ABL Agent, the ABL Lenders, the DIP Term Agent, the DIP Term Lenders, the Prepetition Term Agent, and the Prepetition Term Lenders (and no such consent shall be implied, from any other action, inaction or acquiescence by the ABL Agent, the ABL Lenders, the DIP Term Agent, the DIP Term Lenders, the Prepetition Term Agent, or the Prepetition Term Lenders or an order of this Court, except for sales, transfers, leases or uses of Debtors' inventory in the ordinary course of their businesses). Until such time as the ABL Obligations, the DIP Term Obligations and the Prepetition Term Obligations have been paid full in accordance with the terms of the applicable DIP Loan

Documents and the Prepetition Term Loan Financing Documents, the Debtors shall remit to the ABL Agent, the ABL Lenders, and the DIP Term Agent, as applicable, or cause to be remitted to the ABL Agent, the ABL Lenders and the DIP Term Agent, all proceeds of Collateral for application against the ABL Obligations, the DIP Term Obligations and the Prepetition Term Obligations in accordance with the terms of the applicable DIP Loan Documents, the Prepetition Term Loan Financing Documents, the Intercreditor Agreement and this Final Order.

49.    <u>Inventory</u>. The Debtors shall not, without the consent of the ABL Agent or the ABL Lenders (a) enter into any agreement to return any inventory to any of their creditors for application against any pre-petition indebtedness under any applicable provision of Section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its prepetition indebtedness based upon any such return pursuant to Section 553(b)(1) of the Bankruptcy Code or otherwise; provided that nothing in this paragraph shall adversely affect the rights of third parties.

50.    <u>Restrictions on Cash Collateral Use; Plan Treatment</u>. All postpetition advances and other financial accommodations under the DIP Loan Documents are made in reliance on this Final Order and the Interim Order and the Debtors shall not seek in these Cases, or in any subsequently converted case under Chapter 7 of the Bankruptcy Code, any order (other than the Final Financing Order) which authorizes the use of cash collateral of the Debtors in which the ABL Agent, the DIP Term Agent, the Prepetition Term Agent, the DIP Term Lenders, the Prepetition Term Lenders or the ABL Lenders have an interest, or the sale, lease, or other disposition of property of any of the Estates in which the ABL Agent, the DIP Term Agent, the Prepetition Term Agent, the DIP Term Lenders, the Prepetition Term Lenders or the ABL Lenders have a lien or security interest, except as permitted hereunder or in the DIP Loan

Documents or the Intercreditor Agreement. Notwithstanding anything to the contrary herein, the

ABL Agent and the ABL Lenders agree that any and all reserves that may be implemented by

the ABL Agent against the Borrowing Base (as such term is defined in the DIP ABL Credit

Agreement) during the Chapter 11 Cases shall be established, adjusted and otherwise maintained

in accordance with the Reasonable Credit Judgment (as defined in the DIP ABL Credit

Agreement) of the ABL Agent consistent with terms of the DIP ABL Credit Agreement, and

prior practices of ABL Agent with respect to the Debtors in effect immediately prior to the

commencement of the Chapter 11 Cases and that upon the occurrence of an Event of Default (as

defined in the DIP ABL Credit Agreement) after the date hereof, the ABL Agent agrees that, to

the extent Borrowers have Availability (as defined in the DIP ABL Credit Agreement), the ABL

Lenders shall continue to make Revolving Loans (as defined in the DIP ABL Credit Agreement)

to the Debtors for a period of (7) consecutive business days before exercising remedies as

described in the DIP ABL Credit Agreement. The security interests and liens granted to or for

the benefit of the ABL Agent, the ABL Lenders, the DIP Term Agent, the DIP Term Lenders,

the Prepetition Term Agent and the Prepetition Term Lenders hereunder and the rights of the

ABL Agent, the ABL Lenders, the DIP Term Agent, the DIP Term Lenders, the Prepetition

Term Agent and the Prepetition Term Lenders pursuant to this Final Order, the Interim Order,

and the DIP Loan Documents are cumulative and shall not be altered, modified, extended,

impaired, or affected by any plan of reorganization or liquidation of Debtors.

Dated: _April 28_____, 2015
      Wilmington, Delaware

_____
Honorable Laurie S. Silverstein
United States Bankruptcy Judge